418 A.2d 467

**COMMONWEALTH of Pennsylvania**

**v.**

**Alphonso Francis ZABALA, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 10, 1979.

Filed Jan. 18, 1980.

Janet W. Mason, Assistant Public Defender, West Chester, for appellant.

Lee Ruslander, Assistant District Attorney, West Chester, for Commonwealth, appellee.

Before PRICE, WIEAND and VAN der VOORT, JJ.*

* Judge DONALD E. WIEAND is sitting by special designation.

PRICE, Judge:

In this appeal, we are asked to decide whether appellant's acquittal on a federal firearms charge bars his subsequent trial in the court of common pleas on state charges arising out of the same incident. For the following reasons we believe it does not, and we consequently affirm the order denying appellant's motion to quash the information.

The path of this litigation, and the factual background of the incident, may be traced as follows. At approximately 11:00 a. m. on January 27, 1977, an individual, later identified as appellant, knocked at the door of the Sarni residence located in North Coventry, Chester County. When Ms. Virginia Cole, an employee of the Sarnis, opened the door, appellant asked her for directions to the home of a Dr. Pentz. While Ms. Cole was responding, appellant pulled open the door and at gunpoint forced her back into the kitchen, where she was handcuffed and made to lie on the floor. While the house was being ransacked, another armed individual entered the kitchen, and Ms. Cole could also hear the voice of a third man in the house during the episode. She later provided police with a description of her assailant and identified appellant's picture from a photographic display. The latter was then apprehended.

On August 17, 1977, an indictment was filed in the United States District Court for the Eastern District of Pennsylvania charging appellant with a violation of Title 18 U.S.C. App. § 1202(a)(1) (former felon not to possess firearm).[1] Pursuant to a jury trial commenced on November 7, 1977, he was found not guilty of that charge. On September 23, 1977, a complaint was filed against appellant and he was

[1] That section provides in pertinent part:
"(a) Any person who—
(1) has been convicted by a court of the United States or of a State or any political subdivision thereof of a felony, or

. . . . .

(5) being an alien is illegally or unlawfully in the United States, and who receive[d], possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both."

subsequently held for court under the following charges: robbery,[2] theft by unlawful taking or disposition,[3] terroristic threats,[4] recklessly endangering another person,[5] simple assault,[6] receiving stolen property,[7] and criminal conspiracy.[8] A jury trial commenced on March 6, 1978, and was terminated in a mistrial eight days later when the jury reported that it was hopelessly deadlocked. Prior to the scheduled retrial, appellant filed on January 5, 1979, an application to quash the information based on an alleged violation of the double jeopardy clause of the United States Constitution. That application was denied, and this appeal followed.

The fifth amendment to the United States Constitution provides that "[n]o person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . ." In *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), the United States Supreme Court held that this constitutional protection against double jeopardy was applicable to the states through the fourteenth amendment. Shortly afterward, our supreme court in *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), entered into an extensive analysis of the considerations involved in reconciling the double jeopardy clause with the dual sovereignty doctrine developed in *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).[9] It there recog-

2. 18 Pa.C.S. § 3701.

3. 18 Pa.C.S. § 3921.

4. 18 Pa.C.S. § 2706.

5. 18 Pa.C.S. § 2705.

6. 18 Pa.C.S. § 2701.

7. 18 Pa.C.S. § 3925.

8. 18 Pa.C.S. § 903.

9. "We have here two sovereignties, deriving power from different sources, capable of dealing with the same subject-matter within the same territory. Each may, without interference by the other, enact laws to secure prohibition, with the limitation that no legislation can give validity to acts prohibited by the Amendment. Each government in determining what shall be an offense against its peace and

nized that the disparate interests inherent in these two concepts must be balanced—on the one side, the interests of the two sovereigns, federal and state, and on the other, the interests of the individual to be free from twice being prosecuted and punished for the same offense. *Commonwealth v. Mills, supra,* 447 Pa. at 169, 286 A.2d at 640. In weighing these considerations, the court viewed the double jeopardy clause as involving

"three general rules which preclude a second trial or a second punishment for the same offense: (1) retrial for the same offense after acquittal; (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial. The judiciary views these rules as expressions of self-evident moral precepts: It is wrong to retry a man for a crime of which he previously has been found innocent, wrong to harass him with vexatious prosecution, and wrong to punish him twice for the same offense." *Id.,* 447 Pa. at 169, 286 A.2d at 641.

On this basis, the court ruled that

"henceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed." [10] *Id.,* 447 Pa. at 171–72, 286 A.2d at 642 (footnote omitted).

dignity is exercising its own sovereignty, not that of the other." *United States v. Lanza,* 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922).

**10.** In direct response to this decision, the legislature in 1972 enacted section 111 of the Crimes Code which provides in part:

"When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar

While the defendant in *Mills* was convicted on federal charges substantially similar to those with which he was charged by the Commonwealth, our supreme court in *Commonwealth v. Grazier*, 481 Pa. 622, 393 A.2d 335 (1978), ruled that neither of these two factors is controlling in a double jeopardy analysis. In *Grazier*, the defendant was acquitted on the federal charge of mail fraud, but subsequently convicted on a Commonwealth charge of arson arising out of the same incident. Our supreme court reversed that conviction and noted as follows:

> "For purposes of double jeopardy analysis, the outcome of the first trial is generally irrelevant as long as the factfinder decides the merits of the question of the defendant's guilt or innocence.
>
> .    .    .    .    .
>
> In terms of the *Mills* analysis, a second trial will not be permitted if the interests of the Commonwealth are sufficiently protected at the federal trial.    .    .    . Instantly, both the federal government and the Commonwealth's principal interest is against the crime of arson. While federal mail fraud is a different crime from arson, both statutes as used in this case protect the same governmental interest. Under these facts, *Mills* will act as a bar to a state prosecution for arson following an acquittal in federal court for mail fraud in connection with a scheme to commit arson." *Id.*, 481 Pa. at 631, 393 A.2d at 339–40 (footnote omitted).

to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

(ii) the second offense was not consummated when the former trial began."

In *Commonwealth v. Mascaro*, 260 Pa.Super. 420, 394 A.2d 998 (1978), this court adhered to the admonishment in *Grazier* to liberally construe section 111 of the Crimes Code. In *Mascaro*, the defendant pled guilty in federal court to two counts each of mail fraud and false statements. He was later convicted on state charges—including conspiracy, unsworn falsification, and deceptive business practices—that stemmed from the identical scheme on which the federal charges were based. We reversed those convictions because

"[t]o hold otherwise would be to apply the 'interest analysis' test and § 111 in such a narrow and limiting manner so that dual prosecutions would effectively be barred *only* where exact crimes match exact dates—crime for crime and date for date.

The Federal Mail Fraud (18 U.S.C.A. § 1341) and False Statement (18 U.S.C.A. § 1001) statutes are designed to guard against theft and fraud. So too are the state statutes—Theft by Deception (18 Pa.C.S.A. § 3922), Deceptive Business Practices (18 Pa.C.S.A. § 4107), and Unsworn Falsifications to Authorities (18 Pa.C.S.A. § 4904). Similarly, the inchoate crime of Criminal Conspiracy (18 Pa.C.S.A. § 903) is an offense of the same grade and degree as the most serious of its criminal objectives—here, theft and fraud. The state and federal statutes employed here are designed to protect a similar governmental interest; contrariwise would be 'form over substance.'" *Id.*, 260 Pa.Super. at 427, 394 A.2d at 1001–02 (emphasis in original).

Appellant would now argue that the *Mills* analysis, as extended and clarified by *Grazier* and *Mascaro*, demands that the state charges levied against him be dismissed. Unfortunately, while appellant has recognized the applicable principles, he has failed to correctly apply them.

First, in terms of a *Mills*-type interest analysis, it is quite clear that the two laws here involved do not "protect a similar governmental interest." In discussing the purpose

of 18 U.S.C.App. § 1202, the 3rd Circuit Court of Appeals noted that

> "§ 1202, despite its location within the federal criminal code, is essentially regulatory in nature. It is unlike most other criminal laws which proscribe acts that are in themselves pernicious, *e. g.*, kidnapping, theft or embezzlement. By contrast, the receipt or possession of firearms does not constitute conduct that is inherently harmful. As a result, Congress has not interdicted such behavior altogether. Rather, what the legislative authors have done is to impose controls on activities involving weapons." *United States v. Graves*, 554 F.2d 65, 69–70 (3d Cir. 1977).

In contradistinction to the regulatory purpose served by the federal statute, the intent of the Crimes Code sections that appellant was charged under is to directly prohibit, and impose sanctions on, overt criminal activity. Unlike the federal mail fraud charge in *Mascaro* which went to the heart of the criminal activity, section 1202 is here concerned only tangentially with the actions proscribed by the pertinent Crimes Code sections. In a broad sense, of course, a limitation on the possession of firearms contributes to the reduction of general criminal activity, but this is far from an adequate nexus for double jeopardy purposes. Were one to assume that federal and state statutes served the same essential purpose merely by impeding criminal activity, it would be tantamount to eliminating any joint state and federal prosecution for acts arising out of the same incident.

Second, the actual *conduct* proscribed by the federal statute is different from that proscribed by the pertinent Crimes Code sections. The former is solely concerned with the use of a firearm, while the latter does not include any charges involving possession of a firearm, nor is the use of a firearm alleged in any of the counts.

Third, section 111 of the Crimes Code provides that a subsequent prosecution need not be barred if each offense "requires proof of a fact not required by the other." The

elements of proof required for conviction under 18 U.S.C. App. § 1202(a)(1) are: (1) that there be a prior felony conviction; (2) that the firearm had a minimal nexus with interstate commerce; and (3) that a firearm was actually involved. *See Scarborough v. United States*, 431 U.S. 563, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *United States v. Bass*, 404 U.S. 336, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). None of the Commonwealth charges require proof of any of these factors.

Finally, the doctrine of collateral estoppel, made a part of fifth amendment double jeopardy protection in *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), does not bar appellant's prosecution. In *Ashe*, the court explained that

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit. . . .

The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States*, 332 U.S. 575, 579, [68 S.Ct. 237, 240, 92 L.Ed. 180, 184]. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal

proceedings at least in every case where the first judgment was based upon a general verdict of acquittal." *Id.* at 443–44, 90 S.Ct. at 1194 (footnotes omitted).

The crucial question is thus whether a pertinent issue of ultimate fact has indeed been litigated in appellant's favor. Specifically, if the federal jury decided that appellant was not the man who confronted Ms. Cole in the Sarni residence, then he obviously could not be found guilty of the Commonwealth charges, all of which are premised on his presence in that residence on January 27, 1977.

Unfortunately for appellant's cause, this cannot be said with certainty. As this court has just recently noted,

"Where a jury has a multitude of issues to consider in its deliberations and the verdict on its face does not reflect on what the decision is based, the court cannot say with certainty that any one issue is conclusively adjudicated." *Commonwealth v. Klinger*, 264 Pa.Super. 21, 32, 398 A.2d 1036, 1042 (1979).

The acquittal on the federal charge could have been based on any number of factors having no relation to appellant's presence or action at the scene of the activity. Most notably, the government may have failed to prove a nexus between the crime and interstate commerce, or the jury may not have believed that appellant actually carried a gun.[11] Consequently, we cannot conclude that an ultimate fact bearing centrally on appellant's charges under the Crimes Code was decided.

The order of the court of common pleas is therefore affirmed.

11. A very real possibility, as Ms. Cole testified that she had never been close to a gun and did not know if the one wielded by appellant was a toy or not. (N.T. 54).