483 A.2d 862
**COMMONWEALTH of Pennsylvania**
v.
**Anthony TRIGNANI, Appellant.**
Superior Court of Pennsylvania.
Submitted June 8, 1984.
Filed Oct. 19, 1984.
Petition for Allowance of Appeal Denied March 4, 1985.

528

Nino V. Tinari, Philadelphia, for appellant.

Christopher J. Serpico, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before TAMILIA, JOHNSON and HESTER, JJ.

## OPINION

TAMILIA, Judge:

Anthony Trignani, the appellant, was charged with criminal solicitation [1] to commit first degree murder and criminal attempt [2] after a series of recorded conversations, taking place between May 28 and June 3, 1981, indicated that the appellant attempted to persuade William Hill, a federal

1. 18 Pa.C.S.A. § 902(a).
2. 18 Pa.C.S.A. § 901(a).

informant, to murder Anthony Sanutti. Appellant's pre-trial motion to suppress this evidence was denied by the lower court. On January 8, 1982, the appellant was convicted by a jury of the above charges. Post-trial motions were filed and an Order denying the motions was entered on March 29, 1983. On June 29, 1983, the appellant was sentenced to prison for a term of four to eight years. Appellant then instituted this appeal, in which he alleges that the introduction of these tape recordings into evidence was improper because their interception was not authorized by a Superior Court judge, as required by Sections 5708 and 5709 of the Pennsylvania Wiretapping and Electronic Surveillance Control Act, 18 Pa.C.S.A. §§ 5701–5726. After thoroughly and independently reviewing the record, the Opinion of the lower court, and the arguments presented by both parties, we affirm the judgment of sentence.

The facts indicate that a criminal investigation of an arson was being conducted by the Bureau of Alcohol, Tobacco and Firearms of the United States Department of Treasury. To assist them in this investigation, an electronic eavesdropping device was attached to federal informant, William Hill, with his full knowledge and consent. The attachment of this body transmitter served the dual purpose of protecting Mr. Hill, as well as gathering evidence concerning the ongoing investigation.

On May 28, 1981, William Hill, while equipped with the body transmitter, met with the appellant and one Fred E. Sutliff at Denny's Restaurant in Middletown Township, Bucks County, Pennsylvania. The conversation which took place between these three individuals was recorded and intercepted by federal agent, Douglas Morgan, and Pennsylvania State Trooper, Charles Conley. During this meeting, a conversation occurred in which the appellant attempted to solicit William Hill to murder Anthony Sanutti. Subsequently, there were several telephone calls from Hill to the appellant's residence. These telephone conversations were intercepted and recorded by agent Morgan and trooper Hill pursuant to William Hill's written consent. During these

telephone conversations, the appellant made further attempts to solicit William Hill to murder Anthony Sanutti.

On June 3, 1981, the appellant again met with William Hill at Ida's Diner in Croydon, Bucks County, Pennsylvania. During this meeting, Hill once again was equipped with a body transmitter and the conversations were intercepted and recorded by federal agent Morgan and state trooper Conley. At this meeting, appellant mentioned the sum of $50,000 to Hill and arranged that Hill meet him that evening at 700 Annin Street, Philadelphia, where appellant's sister lived so that appellant could deliver a revolver to Hill. At the conclusion of the meeting, Hill met with Morgan and other federal agents, as well as Conley, whereupon he was followed to Annin Street in Philadelphia. Hill then sounded the horn in his automobile and the appellant came out of the house to deliver a gun to him. Throughout this meeting, Hill, as previously, was equipped with a body transmitter and the entire conversation was intercepted and recorded by federal agent Morgan and trooper Conley. During the trial, tapes made from the several conversations between the appellant and Hill were presented to the jury.

This case raises the question of whether tape recorded conversations made under federal law are admissible in Pennsylvania courts under Section 5717(c) of Pennsylvania's Wiretapping and Electronic Surveillance Control Act. 18 Pa.C.S.A. §§ 5701–5726. Section 5717(c) provides as follows:

(c) *Otherwise authorized personnel* —Any person who, by any means authorized by the laws of another state or the Federal Government, has obtained knowledge of the contents of any wire or oral communication or evidence derived therefrom, may disclose such contents or evidence to an investigative or law enforcement officer and may disclose such contents or evidence where otherwise admissible while giving testimony under oath or affirmation in any proceeding and in any court of this Commonwealth.

Thus, Section 5717(c) is a clear expression of the legislative intent that the contents of any wire or oral communication

which is intercepted pursuant to federal authority may be admissible evidence in Pennsylvania courts. 1 Pa.C.S.A. § 1921(b).

▇ The appellant contends that because no application for an order authorizing the interception of oral and wire communications was made through a Superior Court judge as required by 18 Pa.C.S.A. §§ 5708 and 5709, the taped conversations should have been suppressed. Specifically, the appellant argues that the Commonwealth attempted to circumvent the more stringent requirements of the Pennsylvania Wiretapping and Electronic Surveillance Control Act by obtaining a wiretap under federal law when it had always intended to use the wiretap for purposes of a state prosecution.[3]

▇ We note, however, that the taped conversations were obtained under the authority of 18 U.S.C. § 2511(2)(c),[4] which expressly permits consensual eavesdropping of this

3. State wiretap guidelines must at least be as stringent as the requirements of the controlling federal wiretap statute, Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510–20. Consequently, state wiretap standards which establish more restrictive guidelines predominate over the federal standards since states are free to provide greater protection to their citizens than Title III. However, states may not establish guidelines which are more permissive than Title III. *United States v. Geller*, 560 F.Supp. 1309 (E.D.Pa.1983).

For a detailed discussion of both federal and state wiretapping and electronic surveillance laws, *see* J. CARR, THE LAW OF ELECTRONIC SURVEILLANCE (1977) and C. FISHMAN, WIRETAPPING AND EAVESDROPPING (1978).

4. 18 U.S.C. § 2511(2)(c) provides:

(c) It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception.

Therefore, if a party consents, the police officials can intercept or record the conversation, and the prosecuting attorney can play the tape or elicit testimony as to what the police heard, without obtaining a warrant. We point out that there is no expectation of privacy when there is a consensual interception; thus no Fourth Amendment rights are violated. *See United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966); *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *On Lee v. United States*, 343 U.S. 747, 72 S.Ct. 967, 96 L.Ed. 1270 (1952).

nature. Since these interceptions were authorized pursuant to federal law, they clearly fall within the ambit of 18 Pa.C.S.A. § 5717(c). Moreover, in the recent case of *Commonwealth v. Taraschi*, 327 Pa.Super. 179, 475 A.2d 744 (1984), this Court held that tape recordings obtained by federal agents pursuant to federal law were admissible under 18 Pa.C.S.A. § 5717(c). In *Taraschi, supra,* the wiretaps were performed by federal agents who were acting under "color of law" when they consented to the interception of their communications. 18 U.S.C. § 2511(2)(c). Judge Cavanaugh, in his Opinion, held that these tape recordings were admissible under 18 Pa.C.S.A. § 5717(c), since they were "authorized by the laws of . . . the Federal Government," notwithstanding the fact that no application was made for a court order pursuant to Sections 5708 and 5709 of this Commonwealth's anti-wiretap statute, and that these recordings were obtained during a joint investigation by federal and state officers. *Commonwealth v. Taraschi, supra,* 327 Pa.Superior Ct. at 195–196, 475 A.2d at 752–753.

■ Appellant has failed to present any evidence to convince us that the Commonwealth attempted to circumvent the Pennsylvania statute. At trial, federal agent Douglas Morgan testified that the body transmitter was placed on William Hill with his total consent and was authorized by a federal court order for the informant's protection since he was involved in the Federal Witness Protection Program. Additionally, Morgan testified that he was hoping to obtain information through Hill regarding an ongoing arson investigation. While the trial court made no specific finding that this investigation was conducted jointly between state and federal officers, the fact that trooper Conley introduced federal agent Morgan to Hill and was present during the taping of the conversations does not constitute a violation of the Pennsylvania Statute. We point out that it is common practice in law enforcement circles for federal and state law enforcement personnel to exchange information

and to offer assistance to one another.[5] Therefore, we must conclude that the use in this Commonwealth of taped conversations secured through a legally authorized federal wiretap is not in contravention of the Pennsylvania anti-wiretap statute, and that any evidence disclosed by such means may be admissible in our courts. To reach any other result would severely hamper the detection and apprehension of members of organized crime syndicates and would impose severe restrictions on this Commonwealth's law enforcement personnel. Moreover, it has recently been recognized that the reason for the success of "serial murders", which are on a horrendous and dramatic increase, is due to the lack of coordination and exchange of information between federal, state and local law enforcement officials. "20/20", ABC News, July 5, 1984. In an interview, Henry Lee Lucas, this country's most notorious "serial killer", admitting to more than 300 murders of women, acknowledged he was successful only because of the inability of law enforcement officials to adequately share information which could have led to his capture, thus saving many lives. "20/20", ABC News, supra.

This Court has previously held that information obtained during an investigation in New Jersey pursuant to a validly authorized wiretap under that state's law is not in contravention of the Pennsylvania anti-wiretap statute. *Commonwealth v. Bennett*, 245 Pa.Super. 457, 369 A.2d 493 (1976). In *Bennett, supra,* a New Jersey court, pursuant to a state statute that permitted wiretapping, authorized a police wiretap on a telephone located within that state, as incident to a drug investigation which was initiated on information supplied to New Jersey authorities by Pennsylvania police. The New Jersey wiretap revealed that calls were made to and received from the New Jersey telephone number by a resident of Bucks County, Pennsylvania. Subsequently, this information was given to the Pennsylvania police who obtained a search warrant, and while searching

---

5. It should be noted that 18 U.S.C. § 2517 contains provisions for the disclosure of intercepted information between federal and state officers which are similar to those provided in 18 Pa.C.S.A. § 5717.

the defendant's house and automobile, discovered a quantity of marijuana and drug paraphernalia. This Court held that the evidence obtained through a legal wiretap in a sister state could properly form the basis for a search warrant in Pennsylvania even though such activity would have been illegal under our anti-wiretap statute. *Id.*, 245 Pa.Superior Ct. at 461, 369 A.2d at 495. *See also Commonwealth v. Corbo*, 295 Pa.Super. 42, 440 A.2d 1213 (1982) (evidence obtained by Pennsylvania police from New Jersey police, who obtained information from a court approved electronic surveillance of New Jersey telephones, provided the Pennsylvania police with sufficient facts upon which to establish probable cause to issue a search warrant).

In *Commonwealth v. Inadi*, 303 Pa.Super. 409, 449 A.2d 753 (1982), which dealt with an extradition proceeding, which is summary in nature, we held that the Commonwealth need not prove that all of the stringent safeguards of its own anti-wiretap statute were complied with when it relied upon information based on wiretaps in the demanding state. Our reasoning was that "[t]o place this burden on the Commonwealth would go far beyond what is required in extradition proceedings." *Id.*, 303 Pa.Superior Ct. at 413, 449 A.2d at 755.

In the instant case, a similar burden would be placed on this Commonwealth's law enforcement agencies if we were to hold that information obtained by federal agents pursuant to federal law is in contravention of Pennsylvania's anti-wiretap statute. In *Commonwealth v. Bennett, supra*, we stated that:

> If the legislature of a sister state or foreign jurisdiction determines that wiretapping will be permitted within its borders, we will not, under the present laws of Pennsylvania, question that decision. Nor should we hinder our law enforcement agencies by needless restrictions upon their use of information and evidence that properly comes to their attention.

*Id.*, 245 Pa.Superior Ct. at 459–461, 369 A.2d 494–95. We see no need to deviate from this reasoning in the case

before us. Therefore, we hold that the lower court was correct in admitting the taped conversations under 18 Pa.C. S.A. § 5717(c).[6]

In reaching our decision, we have carefully considered the negative implications of wiretapping and we are aware of its potential encroachment upon our citizens' cherished right to privacy. While the constitutional rights of all citizens must be zealously guarded, we believe that a delicate balance between those rights and effective law enforcement can be maintained. Clearly, our legislature did not intend that we have an anti-wiretap law to safeguard communications among criminal networks; it was concerned with intrusions on the right of privacy of law-abiding citizens.

■ Appellant raises four other issues for our consideration. First, he contends that the trial court erred when it failed to grant his pre-trial motion to dismiss under 18 Pa.C.S.A. § 111,[7] which proscribes double jeopardy. The

6. In *Commonwealth v. Marino,* 38 Bucks County L.R. 182 (1982), like the case before us, the defendant challenged the admissibility of taped conversations made under federal authority and not pursuant to the provisions of Pennsylvania's own wiretap statute. The court, however, ruled that the tape was not rendered inadmissible in a Pennsylvania court simply because it was obtained pursuant to federal, rather than state, authority. Thus, the court in *Marino, supra,* held that 18 Pa.C.S.A. § 5717(c) expressly permits the use of evidence obtained under federal authority, notwithstanding that the investigation had been conducted jointly by federal and state officers. *Id.* at 185. Although we are not bound by this decision of the Court of Common Pleas of Bucks County, we nevertheless conclude that its analysis of § 5717(c) is entitled to appropriate consideration.

7. 18 Pa.C.S.A. § 111 provides:

§ 111. **When prosecution barred by former prosecution in another jurisdiction**

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for the same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

essence of this argument is that appellant's prior federal conviction on charges of former convict not to possess a firearm, 18 U.S.C.App. § 1202(a)(1),[8] which arose from his delivery of the pistol to informant Hill on June 3, 1981, should have barred his later prosecution on the instant charges.

Section 111 of the Crimes Code was enacted in direct response to our Supreme Court's decision in *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971), which contained an extensive analysis of the considerations involved in reconciling the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution with the dual sovereignty doctrine developed in the seminal case of *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922). The *Mills* Court recognized that the interests of the two sovereigns, federal and state, must be balanced against the interests of the individual to be free from having his liberty taken away twice for the same offense. 447 Pa. at 169, 286 A.2d at 640–41. On the basis of this interest analysis, the *Mills* Court held that:

[H]enceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be

(ii) the second offense was not consummated when the former trial began.

(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted.

8. That section provides in pertinent part:

(a) Any person who—

(1) has been convicted by a court of the United States or of a State or any political Subdivision thereof of a felony, or

. . . .

(5) being an alien is illegally or unlawfully in the United States, and who receives, possesses, or transports in commerce or affecting commerce, after the date of enactment of this Act, any firearm shall be fined not more than $10,000 or imprisoned for not more than two years, or both.

permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed.

*Id.*, 447 Pa. at 171–72, 286 A.2d at 642. (footnote omitted).

Since the *Mills* decision, our appellate courts have addressed the principle of double jeopardy and Section 111 several times. *See e.g., Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978); *Commonwealth v. Mascaro,* 260 Pa.Super. 420, 394 A.2d 998 (1978). In the recent case of *Commonwealth v. Abbott,* 319 Pa.Super. 479, 466 A.2d 644 (1983), this Court, in an instructive Opinion authored by the Honorable Stephen J. McEwen, Jr., reviewed the current posture of the protection from double jeopardy in this Commonwealth and enunciated the following three pronged test to determine the applicability of Section 111:

1.) Is the prosecution the Commonwealth proposes to undertake "based on the same conduct" for which appellant was prosecuted by the federal government?

2.) Do each of the prosecutions require proof of a fact not required by the other?

3.) Is the law defining the state offense designed to prevent a substantially different harm or evil than the law defining the federal offense?

*Id.*, 319 Pa.Superior Ct. at 489, 466 A.2d at 649. Judge McEwen added that "an affirmative answer to the initial inquiry lowers the bar to the subsequent prosecution and that only an affirmative response to *both* of the remaining inquiries can lift the bar." *Id.* (emphasis in original).

Here, the Commonwealth's prosecution was based on the same conduct for which the appellant was prosecuted by the federal government (i.e., appellant's delivery of the pistol to the informant). Therefore, our inquiry turns to whether

each of the prosecutions require proof of a fact not required by the other.

In the factually similar case of *Commonwealth v. Zabala*, 274 Pa.Super. 401, 418 A.2d 467 (1980), the defendant's acquittal under 18 U.S.C.App. § 1202(a)(1) was held to be insufficiently related to the Commonwealth's charges, which included criminal conspiracy, to warrant the application of Section 111. "The elements of proof required for a conviction under 18 U.S.C.App. § 1202(a)(1) are: (1) that there be a prior felony conviction; (2) that the firearm had a minimal nexus with interstate commerce; and (3) that a firearm was actually involved." *Id.*, 274 Pa.Superior Ct. at 407, 418 A.2d at 471. (citations omitted).

In the case before us, the Commonwealth's charges clearly require proof of facts not required by the federal prosecution. Additionally, we note that there is no federal law under which the appellant could have been prosecuted for the present charges.

We now must determine whether the law defining the state offense is designed to prevent a substantially different harm or evil than the law defining the federal offense. Our review of the record leads us to conclude that the interests of the Commonwealth and the Federal Government in prosecuting the appellant are substantially different. We emphasize that the purpose of 18 U.S.C.App. § 1202(a)(1) is essentially regulatory in nature since the possession of a firearm does not constitute conduct that is inherently harmful. *See United States v. Graves*, 554 F.2d 65 (3d Cir.1977). On the other hand, the intent of the Crimes Code sections that appellant was charged under is to directly prohibit overt criminal activity. In distinguishing the interests of the federal and state criminal provisions, this Court stated in *Commonwealth v. Zabala, supra,* that:

> In a broad sense, of course, a limitation on the possession of firearms contributes to the reduction of general criminal activity, but this is far from an adequate nexus for double jeopardy purposes. Were one to assume that federal and state statutes served the same essential pur-

540

pose merely by impeding criminal activity, it would be tantamount to eliminating any joint state and federal prosecution for acts arising out of the same incident. *Id.*, 274 Pa.Superior Ct. at 408, 418 A.2d at 471. Thus, we conclude that Section 111 does not act as a bar to the instant prosecution.

■ Secondly, the appellant contends that the trial court incorrectly permitted the prosecuting attorney to cross-examine him as to a prior conviction. However, we note that the record clearly reveals that the fact of a prior conviction for aggravated robbery was introduced by the Commonwealth only to repudiate specific evidence of good character which was offered by the appellant. This use for impeachment purposes is specifically authorized by 42 Pa.C.S.A. § 5918(1),[9] which states that a witness may be required to answer questions tending to show that he has committed, been charged with, or been convicted of any offense, if he has presented evidence tending to prove his own good character or reputation. Had the appellant limited his testimony to the conduct charged in the criminal information, the Commonwealth would have been prohibited from introducing evidence pertaining to the appellant's prior criminal record. *Commonwealth v. Roots*, 482 Pa. 33, 393 A.2d 364 (1978); *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). However, the record in the instant case discloses that the appellant exceeded the scope of questioning by the prosecutor regarding the shooting of

9. 42 Pa.C.S.A. § 5918(1) provides:

§ 5918. **Examination of defendant as to other offenses**

No person charged with any crime and called as a witness in his own behalf, shall be asked, or if asked, shall be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation unless:

(1) he shall have at such trial, personally or by counsel, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or

(2) he shall have testified at such trial against a codefendant, charged with the same offense.

Anthony Sanutti, and attempted to assert his own good character when he responded to the following question:

Q. You never shot Anthony Sanutti?

A. I never shot anybody in my life.

(N.T. 1/7/82; 81)

At this point, a sidebar conference was held outside of the hearing of the jury, wherein the trial court permitted the prosecuting attorney to bring out the appellant's prior conviction for aggravated robbery where a store clerk was shot since the appellant volunteered that he was a nonviolent person. We agree with the Opinion of the lower court which stated that:

> This voluntary admission constituted, in our view, a direct and forcible introduction of Defendant's character for nonviolence. Defendant, when he attempts to apply its lesson to the case at bar, plainly misconceives the intention of *Bighum.* That case considered the use of prior convictions to generally impeach an accused's credibility. Here, the use of the prior conviction was limited to the specific rebuttal of Defendant's unsolicited character testimony. (Slip Op. at 9)

Thus, the Commonwealth's decision to pursue a line of questioning directed at appellant's prior conviction for aggravated robbery was permissible under 42 Pa.C.S.A. § 5918(1). *See Commonwealth v. Bastone,* 211 Pa.Super. 509, 239 A.2d 863 (1968) (where defendant gives testimony impliedly intended to establish his good character or reputation, he subjects himself to attack on cross-examination as to other prior convictions).

 The appellant next contends that his trial counsel was ineffective for failing to attack the jurisdiction of the lower court. Specifically, the appellant contends that the Commonwealth's evidence showed that the "substantial step" giving rise to criminal liability (*e.g.,* the delivery of the pistol by appellant), occurred in Philadelphia, and that prosecution in Bucks County was therefore improper. While it is conceded that proof of a "substantial step" toward the commission of the murder was necessary in order for the

542

appellant to be convicted of criminal attempted homicide, there is no authority for appellant's proposition that jurisdiction is limited to the county in which the "substantial step" occurred. In the face of a similar jurisdictional challenge in *Commonwealth v. Herriott,* 265 Pa.Super. 143, 401 A.2d 841 (1979), this Court, after citing extensive authority, held that "[w]here, as here, an offense is continuing, or when elements of the same offense occur in several counties, the offender may be tried in any county where an overt act occurred." 265 Pa.Super. at 152, 401 A.2d at 846. Here, the solicitation, agreement and planning of Anthony Sanutti's murder was recorded over a series of several meetings, each of which occurred in Bucks County. Therefore, the jurisdictional requisites noted in *Commonwealth v. Herriott, supra,* were clearly satisfied and the prosecution in the instant case before the Bucks County Court of Common Pleas was entirely proper. We find appellant's jurisdictional challenge to be patently frivolous and conclude that trial counsel had no obligation to pursue this meritless claim. *Commonwealth v. Perkins,* 496 Pa. 482, 437 A.2d 1143 (1981).

Finally, the appellant contends that there was insufficient evidence to sustain his convictions because of inconsistencies and the lack of credibility in the testimony of the Commonwealth's witnesses. As we have stated many times:

In testing the sufficiency of the evidence, we proceed in several steps. First, we accept as true all the evidence upon which the finder of fact could properly have reached its verdict. Next, we give the Commonwealth the benefit of all reasonable inferences arising from that evidence. And finally, we ask whether the evidence, and the inferences arising from it, are sufficient in law to prove beyond a reasonable doubt that the appellant is guilty of the crime of which he has been convicted. (citations omitted)

*Commonwealth v. Haggerty,* 294 Pa.Super. 591, 593, 440 A.2d 623, 624 (1982). So viewed, it is clear that the evidence

in the instant case is more than sufficient to sustain the appellant's convictions. The appellant, however, contends that the evidence becomes insufficient due to problems in credibility, primarily between the version of the criminal episode by the Commonwealth's chief witness, William Hill, contrasted against the testimony of the appellant himself, which remarkably was corroborated by the testimony of the purported victim, Anthony Sanutti.[10] The jury, however, chose to believe the Commonwealth's witnesses while disbelieving the defense witnesses.[11]

This Court, in the recent case of *Commonwealth v. Vitacolonna,* 297 Pa.Super. 284, 443 A.2d 838 (1982), stated that:

> The credibility of all witnesses is in the exclusive province of the fact-finder, *Commonwealth v. Barnosky,* 264 Pa. Super. 443, 400 A.2d 168 (1979), such that the weight to be accorded to each witness' testimony and whether to believe all, part or none of the evidence is for the trier of fact, and is not to be disturbed unless the 'evidence offered to support the verdict of guilty is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture ...' *Commonwealth v. Farquharson,* 467 Pa. 50, 60, 354 A.2d 545, 550 (1976).

*Id.,* 297 Pa.Superior Ct. at 288, 443 A.2d at 841.

Accordingly, as the dispute in the instant case was substantially one of credibility, this Court will not

---

10. The testimony of the alleged victim, Anthony Sanutti, directly contradicts the testimony of Hill. Sanutti testified for the defense that he and the appellant were cooperating together to trap Hill in order to have him arrested. He further testified that he was fully apprised of the appellant's meetings with Hill, and that the appellant was acting on his instructions as it was his belief that Hill was going to try and kill him. Consequently, Sanutti testified that by enlisting the appellant to talk with Hill, he could be aware of Hill's intentions. In his own testimony, the appellant stated that everything he had done was at the direction of Anthony Sanutti. Furthermore, he testified that he had no intent to kill Anthony Sanutti or to pay someone else to do so.

11. In addition to federal informant Hill's testimony, the Commonwealth presented additional testimony by federal agent Morgan and state trooper Conley, which corroborated key portions of Hill's testimony. Furthermore, the jury heard the actual tape recorded conversations between the appellant and Hill in which the Sanutti killing was discussed in detail. Finally, the Commonwealth established a motive for the killing based on the appellant's anger at Sanutti's having made over $630,000 from his trucking business without sharing any of the profits with the appellant, who was previously a business partner.

544

disturb the fact-finder's determination as to credibility on appeal. *Commonwealth v. Dobson,* 302 Pa.Super. 57, 448 A.2d 92 (1982). Such a determination is solely within the province of the trier of fact. *Commonwealth v. Edney,* 294 Pa.Super. 67, 439 A.2d 752 (1982). This Court has reviewed the entire record in this case and finds that the evidence presented by the Commonwealth was sufficient to convict appellant of the instant criminal charges.

For the foregoing reasons, we affirm the judgment of sentence of the court below.

Judgment of sentence affirmed.