J-A28020-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| THOMAS H. UNGARD, JR. | : | |
| | : | |
| Appellant | : | No. 1209 MDA 2017 |

Appeal from the Judgment of Sentence Entered October 12, 2011
In the Court of Common Pleas of Lycoming County
Criminal Division at No(s): CP-41-CR-0001398-2007

BEFORE: LAZARUS, J., OLSON, J., and MUSMANNO, J.

MEMORANDUM BY OLSON, J.:                     **FILED MARCH 06, 2019**

Appellant, Thomas H. Ungard, Jr., appeals from the judgment of sentence entered on October 12, 2011, as made final by the denial of his post-sentence motion on July 6, 2017. We affirm in part and reverse in part.

Appellant served as coordinator for the Lycoming County Drug Task Force ("Task Force"), which frequently obtained vehicles through criminal and/or civil forfeiture. In July 2006, the District Attorney learned that Appellant and the Williamsport police chief went on a personal trip to Canada in a forfeited vehicle. When confronted, Appellant paid restitution to the Task Force in an amount equal to the fair market rental value of the vehicle. The Lycoming County District Attorney removed Appellant as coordinator of the Task Force and referred the case to the Attorney General of Pennsylvania for possible prosecution.

The Attorney General's investigation revealed that, on two occasions, Appellant engaged in simulated sales[1] of two forfeited vehicles. Appellant and Adrian Heffley ("Heffley") completed MV-4ST forms which made it appear as though the forfeited vehicles were transferred initially to Heffley and, thereafter, to members of Appellant's family.[2] During the investigation, Appellant asked or encouraged Heffley to lie to investigators by stating that he bought the vehicles, performed maintenance thereon, and then resold the vehicles to Appellant's family members listed on the MV-4ST forms.

On September 25, 2007, the Commonwealth charged Appellant via criminal information with five counts of tampering with public records or information ("tampering"),[3] four counts of theft by failure to make required disposition of funds ("theft"),[4] conspiracy to commit tampering,[5] obstructing the administration of law or other governmental function ("obstruction"),[6] and

---

[1] **See** *Black's Law Dictionary*, 1366 (8th Ed. 1990) ("A sale in which no price or other consideration is paid or intended to be paid, and in which there is no intent to actually transfer ownership.").

[2] Appellant knew Heffley was a mechanic at a garage where Appellant had repair work performed.

[3] 18 Pa.C.S.A. § 4911(a)(1), (a)(3).

[4] 18 Pa.C.S.A. § 3927(a).

[5] 18 Pa.C.S.A. §§ 903, 4911.

[6] 18 Pa.C.S.A. § 5101.

conflict of interest.[7] The trial court dismissed four counts of tampering and one count of theft for failure to make a *prima facie* showing that Appellant committed those offenses. The trial court also denied the Commonwealth leave to amend the criminal information and suppressed certain evidence. Later, the Commonwealth appealed. This Court reversed the dismissal of the tampering and theft charges, reversed the decision barring the Commonwealth from filing an amended criminal information, affirmed the suppression ruling, and remanded for further proceedings. **See Commonwealth v. Ungard**, 15 A.3d 540 (Pa. Super. 2010) (unpublished memorandum).

On remand, Appellant waived his right to counsel and represented himself at trial. On July 22, 2011, a jury convicted Appellant of two counts of tampering and obstruction. Appellant requested the assistance of counsel during post-trial proceedings, including direct appeal. The trial court denied that request and, on October 12, 2011, sentenced Appellant to an aggregate term of 18 months' probation. This Court affirmed the judgment of sentence and our Supreme Court denied allowance of appeal. **Commonwealth v. Ungard**, 68 A.3d 367, 2013 WL 11279623 (Pa. Super. 2013) (unpublished memorandum), *appeal denied*, 77 A.3d 1260 (Pa. 2013). Appellant did not

---

[7] 18 Pa.C.S.A. § 1103(a).

begin serving his probationary term after our Supreme Court denied allowance of appeal but the record does not explain the reason for this delay.

On August 8, 2014, Appellant filed a *pro se* PCRA petition. The PCRA court appointed counsel who filed an amended petition. Thereafter, the PCRA court granted in part and denied in part Appellant's PCRA petition. It reinstated Appellant's direct appellate rights, together with his right to file a post-sentence motion, *nunc pro tunc*. It denied relief on Appellant's remaining claims. On February 9, 2017, Appellant filed a post-sentence motion. On July 6, 2017, the trial court denied that motion. This direct appeal followed.[8]

Appellant presents three issues for our review:

1. Whether the trial court erred by concluding that the evidence was sufficient to [prove that Appellant obstructed the administration of law or governmental function by an unlawful act?]

2. Whether the trial court erred by concluding that [Appellant could be convicted of obstruction for conduct directed at a nongovernmental agent?]

3. Whether the trial court erred by denying [Appellant's] motion to dismiss two counts of tampering[?]

_____

[8] We commend counsel and the PCRA court for cooperating during the pendency of Appellant's PCRA petition and after the PCRA court granted relief. The parties and PCRA court worked together to set deadlines and interpret court orders. We note, however, that the off-the-record cooperation in this case led to subject matter jurisdiction concerns. After questioning counsel regarding the jurisdictional concerns at oral argument, and ordering two rounds of briefing focusing on those concerns, we are satisfied that we have jurisdiction to reach the merits of this appeal. We caution counsel that matters which may impact a court's subject matter jurisdiction should be made part of the certified record.

Appellant's Brief at 8.[9]

Appellant's first two issues challenge the sufficiency of the evidence. "The determination of whether sufficient evidence exists to support the verdict is a question of law; accordingly, our standard of review is *de novo* and our scope of review is plenary." ***Commonwealth v. Edwards***, 177 A.3d 963, 969 (Pa. Super. 2018) (citation omitted). In assessing Appellant's sufficiency challenge, we must determine "whether viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth], there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt." ***Commonwealth v. Sweitzer***, 177 A.3d 253, 257 (Pa. Super. 2017) (citation omitted). "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. . . . The finder of fact, while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part, or none of the evidence." ***Commonwealth v. Davison***, 177 A.3d 955, 957 (Pa. Super. 2018) (cleaned up).

The Pennsylvania Crimes Code provides that:

A person commits a misdemeanor of the second degree if he intentionally obstructs, impairs[,] or perverts the administration of law or other governmental function by force, violence, physical interference or obstacle, breach of official duty, or any other unlawful act, except that this section does not apply to flight by a person charged with crime, refusal to submit to arrest, failure to

---

[9] We have renumbered the issues for ease of disposition.

perform a legal duty other than an official duty, or any other means of avoiding compliance with law without affirmative interference with governmental functions.

18 Pa.C.S.A. § 5101.

Thus, the crime has two elements: (1) intentional obstruction, impairment, or perversion of the administration of law or other governmental function by (2) (i) force, (ii) violence, (iii) physical interference or obstacle, (iv) breach of official duty, or (v) any other unlawful act. **See Commonwealth v. Gentile**, 640 A.2d 1309, 1312 (Pa. Super. 1994), *appeal dismissed*, 675 A.2d 710 (Pa. 1996). Appellant argues that the evidence was insufficient to satisfy the second element of the offense. With respect to this element of the offense, the trial court instructed the jury that, in order to convict Appellant, it must find that Appellant obstructed the administration of law or other governmental function via an unlawful act. N.T., 7/22/11, at 14-15.

At trial, it was the Commonwealth's theory that Appellant obstructed the administration of law through an unlawful act when he encouraged Heffley to lie to investigators. Appellant claims he did not commit an unlawful act because solicitation to avoid one's own prosecution is not a criminal offense. The Commonwealth counters Appellant's contention in two ways. First, it contends that the law-of-the-case doctrine prevents us from reaching the merits of this issue. Alternatively, the Commonwealth argues that the

evidence was sufficient to prove that Appellant obstructed the administration of law or other governmental function via an unlawful act.

The Commonwealth argues that we may not reach the merits of Appellant's argument because of the law-of-the-case doctrine. The law-of-the-case doctrine provides, *inter alia*, that "upon a second appeal, an appellate court may not alter the resolution of a legal question previously decided by the same appellate court[.]" **Zane v. Friends Hosp.**, 836 A.2d 25, 29 n.6 (Pa. 2003) (citation omitted). We conclude that the law-of-the-case doctrine does not bar us from reaching the merits of this issue.

Although we are unaware of any cases directly on point, we find instructive this Court's decision in **Commonwealth v. O'Bidos**, 849 A.2d 243 (Pa. Super. 2004), *appeal denied*, 560 A.2d 123 (Pa. 2004). In **O'Bidos**, the defendant filed a direct appeal. His counsel failed to file a concise statement. This Court affirmed the judgment of sentence. Despite the fact that counsel's omission waived the defendant's claims, this Court addressed the sufficiency challenge. This Court declined to address the merits of the remaining waived issues.

O'Bidos then filed a PCRA petition arguing that counsel was ineffective for not filing a concise statement. The PCRA court denied relief; however, this Court reversed and remanded with instructions for the PCRA court to reinstate O'Bidos' direct appeal rights *nunc pro tunc*. A second direct appeal followed.

On the second direct appeal, O'Bidos raised the same issues that he raised in his first direct appeal. This Court held that it was bound by the law-of-the-case doctrine with respect to the sufficiency challenge, the one issue that the prior panel decided on the merits. *See id.* at 251-253. This Court, however, addressed Appellant's remaining claims of error including those that the prior panel found waived on the first direct appeal. *See id.* at 251.

This disposition is sensible. The defendant in *O'Bidos* obtained appellate review of his sufficiency challenge with the effective assistance of counsel and, therefore, the law-of-the-case doctrine barred a subsequent panel of this Court from revisiting the prior panel's decision on the merits. On the other hand, in the first direct appeal, the defendant received ineffective assistance of counsel with respect to his remaining claims of error. Hence, the subsequent panel was not constrained by the prior panel's disposition of those issues.

*O'Bidos* indicates that we may engage in merits review of Appellant's sufficiency challenge. In *O'Bidos*, the defendant was denied the effective assistance of counsel with respect to those issues this Court found waived during his first appeal. Similar to the abandonment that occurred in *O'Bidos*, Appellant here was denied **any** assistance of counsel with respect to his first appeal. It would create perverse incentives for trial courts and prosecutors if we were to hold that a defendant who is denied his right to counsel on a direct appeal forever forfeits all claims disposed of in the *pro se* direct appeal. It

would eviscerate Appellant's right to effective assistance of counsel. Accordingly, we proceed to analyzing whether the evidence was sufficient to prove that Appellant obstructed the administration of law or other governmental function.

The Commonwealth proceeded under a theory that Appellant obstructed and/or impaired the administration of law or other governmental function by soliciting Heffley's assistance in hindering the ensuing investigation.[10] **See Ungard**, 2013 WL 11279623 at *9 (citation omitted); Commonwealth's Brief at 28. Appellant argues that, pursuant to the hindering prosecution statute, he cannot be criminally culpable for obstructing his own prosecution. The Crimes Code makes it an offense to "hinder the apprehension, prosecution, conviction or punishment of **another**[.]" 18 Pa.C.S.A. § 5105(a) (emphasis added). By the plain language of the statute, one cannot hinder prosecution of oneself. Since Appellant could not be found guilty of hindering his own prosecution, he reasons that he could not be culpable for soliciting that offense. Appellant further argues that because he could not solicit a hindrance to his own prosecution, there was no unlawful act that supported the obstruction charge.

---

[10] Appellant may have obstructed the administration of law or other governmental function via some other unlawful act, *e.g.*, solicitation to violate 18 Pa.C.S.A. § 4904(a)(2) (unsworn falsification to authorities). The Commonwealth, however, did not make this argument at trial. We decline to find that the jury was aware of the intricacies of the Crimes Code and speculate that the jury found Appellant guilty on this basis.

The Crimes Code provides that "[i]t is a defense to a charge of solicitation or conspiracy to commit a crime that if the criminal object were achieved, the actor would not be guilty of a crime under the law defining the offense[.]" 18 Pa.C.S.A. § 904(b). Since Appellant cannot be found guilty of hindering his own prosecution, it follows that he cannot, under section 904(b), solicit such offense. The Commonwealth cites **Commonwealth v. Hacker**, 15 A.3d 333 (Pa. 2011), **Commonwealth v. Bricker**, 41 A.3d 872 (Pa. Super. 2012), and **Commonwealth v. Trignani**, 483 A.2d 862 (Pa. Super. 1984) in support of its argument that section 904(b) is inapplicable in this case. According to the Commonwealth, ruling in favor of Appellant would conflict with those decisions. This argument is unavailing.

In the cases cited by the Commonwealth, the reviewing courts held that the defendant solicitors could be found guilty of solicitation even though the targets of their solicitation were incapable of committing the offenses they were encouraged to carry out. This case presents an entirely different scenario because it is Appellant, the defendant solicitor, who is legally incapable of committing the underlying offense of hindering his own prosecution. In similar situations, this Court has previously recognized that the focus of the solicitation statute is on the solicitor, not the target of his or her solicitation.

In **Commonwealth v. Fisher**, 627 A.2d 723 (Pa. Super. 1993), *appeal denied*, 639 A.2d 24 (Pa. 1994), the defendant was charged with solicitation

to possess a controlled substance with intent to deliver and/or delivery of a controlled substance. This Court concluded that, based on the facts of that case, even if the target of Fisher's solicitations had, in fact, delivered the controlled substance, Fisher would not have been guilty of delivery of a controlled substance and/or possession with intent to deliver a controlled substance. This Court, therefore, held that the defendant "should not have been charged with solicitation to commit that offense. Section 904 explicitly prohibits such a charge." *Id.* at 734; *see also Commonwealth v. Wilson*, 442 A.2d 760, 764 (Pa. Super. 1982), *aff'd in part and vacated in part*, 447 A.2d 1381 (Pa. 1982) (*per curiam*) ("[t]he statute addresses itself to the act of the solicitor in obtaining another individual's 'complicity' in a crime.").

The Commonwealth also contends that Appellant's "position ignores the fact if a defendant solicits another to commit a crime with the intent of promoting or facilitating it, he is guilty of the solicited crime as an accomplice." Commonwealth's Brief at 32. We disagree. Hindering prosecution is defined in such a way that Appellant's conduct is inevitably incident to Heffley's commission of that offense. Appellant is the "another" that must be present in order for Heffley to hinder the prosecution. This is similar to the pregnant woman having an illegal abortion discussed by the Commonwealth in its brief. Hence, pursuant to 18 Pa.C.S.A. § 306(f),[11] and the cases cited by the

_____

[11] That section provides that:

Commonwealth, Appellant cannot be deemed an accomplice to Heffley's hindering his prosecution. To the extent that the Commonwealth argues that solicitation is the "offense" for purposes of section 306(f), that argument is without merit. The "offense" must be a substantive offense and not another inchoate offense. There can be no inchoate liability if there is no liability for the underlying offense.

As the Commonwealth notes in its brief, section 904(b) is taken verbatim from Model Penal Code § 5.04. The comment to that section of the Model Penal Code states that it "make[s] the scope of liability for conspiracy and solicitation congruent with the provisions of Section 2.06 on the liability

_____

> Unless otherwise provided by this title or by the law defining the offense, a person is not an accomplice in an offense committed by another person if:
>
> (1) he is a victim of that offense;
>
> (2) the offense is so defined that his conduct is inevitably incident to its commission; or
>
> (3) he terminates his complicity prior to the commission of the offense and:
>
> (i) wholly deprives it of effectiveness in the commission of the offense; or
>
> (ii) gives timely warning to the law enforcement authorities or otherwise makes proper effort to prevent the commission of the offense.

18 Pa.C.S.A. § 306(f).

of acc[omplices]." Model Penal Code § 5.04 cmt. As section 5.04 makes solicitation congruent with the accomplice liability theory, we cannot construe section 306 and section 904 in the manner proposed by the Commonwealth. Doing so would make them incongruent.

The Commonwealth also argues that our analysis is inconsistent with the purpose of the solicitation statute. Again, we disagree. Although the purpose of the solicitation statute is broad, our General Assembly placed a limit on the scope of the solicitation statute by passing section 904(b). This Court's prior decisions, cited above, show that courts do not read section 904(b) narrowly because of the overall purpose of the solicitation statute.

There is no doubt that Appellant acted nefariously by asking Heffley to hinder prosecution by lying to investigators. Nevertheless, based on the plain language of the relevant statutes and the binding case law, we conclude that this conduct cannot constitute solicitation to hinder another's prosecution, the only theory the Commonwealth advanced at trial for the unlawful act that supported Appellant's obstruction charge. Accordingly, we conclude that the evidence was insufficient to convict Appellant of obstruction and reverse that conviction.[12]

---

[12] Because we grant Appellant relief on this argument, we need not address his alternative reason for reversing his obstruction conviction.

In his final issue, Appellant argues that the trial court erred in not dismissing the two tampering charges as *de minimis* infractions.[13] "We review a trial court's refusal to dismiss an infraction as *de minimis* for an abuse of discretion." ***Commonwealth v. Toomer***, 159 A.3d 956, 959 (Pa. Super. 2017), *appeal denied*, 170 A.3d 979 (Pa. 2017) (citations omitted).

The Crimes Code provides that:

The court shall dismiss a prosecution if, having regard to the nature of the conduct charged to constitute an offense and the nature of the attendant circumstances, it finds that the conduct of the defendant:

(1) was within a customary license or tolerance, neither expressly negatived by the person whose interest was infringed nor inconsistent with the purpose of the law defining the offense;

(2) did not actually cause or threaten the harm or evil sought to be prevented by the law defining the offense or did so only to an extent too trivial to warrant the condemnation of conviction; or

(3) presents such other extenuations that it cannot reasonably be regarded as envisaged by the General Assembly or other authority in forbidding the offense.

18 Pa.C.S.A. § 312(a).

In support of his argument, Appellant focuses on the label the Commonwealth used to describe the transactions in question. Appellant is correct that the Commonwealth used the incorrect term. Appellant engaged

---

[13] Appellant was convicted of tampering with the two MV-4ST forms discussed above.

in "simulated sales" and not "sham transactions" or a "straw purchase."[14]  This lack of precision in defining Appellant's conduct, however, does not entitle him to relief under section 312.  Instead, as Appellant argues in his brief, the trial court was required to consider the factual circumstances of Appellant's case to determine if his infractions were *de minimis*.

Appellant repeatedly argues that he did no pecuniary harm to either a person or the Commonwealth.  He also contends that "there [was] no victim" with respect to his tampering offenses.  Appellant's Brief at 36.  This argument fails because the General Assembly did not criminalize tampering to protect victims.  Instead, our General Assembly made a policy decision that, in order for public records to be reliably accepted as definitive statements of what occurred, there must be criminal penalties attached to tampering with those records.  Hence, the lack of pecuniary loss, or an identifiable victim, does not indicate that the trial court abused its discretion by denying Appellant's motion to dismiss.

Appellant argues that programs by the Pennsylvania Department of Revenue and Pennsylvania Department of Transportation to ensure collection of the appropriate amount of sales tax for vehicle transactions indicate that his infractions were *de minimis*.  He contends that these programs remedy any harm caused by the tampering charges brought in this case.  This

_____

[14] *See* note 1, *supra*.

argument is without merit. Neither the Pennsylvania Department of Revenue nor Pennsylvania Department of Transportation have the authority to prosecute alleged criminals. Instead, the Attorney General or a District Attorney must prosecute crimes. Hence, the lack of prosecutions by the Pennsylvania Department of Revenue and Pennsylvania Department of Transportation is unavailing.

When considering the totality of the circumstances, it is important to recognize that Appellant was trusted with leading the Task Force. He betrayed that trust by using a forfeited vehicle for private use and only reimbursing the Task Force when confronted by the District Attorney. He further betrayed that trust by tampering with public records in an attempt to shield his dealings from public scrutiny. Such actions decreased the public's trust in the Task Force's records. The trial court reasonably concluded that this was not a *de minimis* infraction.

Appellant avers that "[w]hen looking at whether an infraction is *de minimis*, [c]ourts have also looked at whether administrative punishment has dealt with a defendant sufficiently enough to avoid the need for criminal conviction." Appellant's Brief at 38. Since existence of administrative remedies did not deter Appellant, the facts of this case illustrate why the administrative punishment associated with tampering with a title transfer form is insufficient to deter criminal conduct. If a public official is aware that he or she will have a criminal conviction, and possibly lose his or her pension, the

probability that public official will tamper with records decreases dramatically. Hence, contrary to Appellant's argument, administrative remedies are not sufficient to deter such criminal conduct.

We may not review Appellant's *de minimis* argument *de novo*. Instead, we review whether the trial court abused its discretion in denying Appellant's motion to dismiss. It is immaterial whether we, as a reviewing court, would have granted Appellant's motion to dismiss. For the reasons set forth above, we conclude that the trial court did not abuse its discretion by denying Appellant's motion to dismiss. As our reversal of Appellant's obstruction conviction does not upset the trial court's overall sentencing scheme, we decline to remand this matter for further proceedings.

Judgment of sentence affirmed in part and reversed in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/06/2019