**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Sam PISCIOTTA, Jr., Defendant-
Appellant.**

**No. 72–1065.**

United States Court of Appeals,
Tenth Circuit.

Nov. 28, 1972.

Rehearing Denied April 10, 1973.

James W. Treece, U. S. Atty., W. Allen Spurgeon, Asst. U. S. Atty., Denver, Colo., for plaintiff-appellee.

Anthony F. Zarlengo, and Howard M. Kirshbaum, Denver, Colo., for defendant-appellant.

Before LEWIS, Chief Judge, McWILLIAMS, Circuit Judge, and THEIS, District Judge.

THEIS, District Judge.

The appellant, Sam Pisciotta, Jr., appeals from his conviction on four counts of an eight count indictment charging him with violations of 18 U.S.C.A. § 1341 (mail fraud) and 18 U.S.C.A. § 371 (conspiracy). The trial court dismissed Counts Two, Three and Four, and the jury found appellant not guilty as to Count Six. In substance, the indictment charged appellant with conceiving, organizing and executing a scheme to defraud no fewer than twenty-one insurance companies by, first, causing the submission of fraudulent applications for insurance coverage and, later, the filing of claims following a staged automobile accident. Also charged in the indictment were three other participants, one of whom appeared as the government's principal witness. On appeal, the appellant asserts the trial court erred in denying his motion for acquittal; erred in instructing the jury prior to conclusion of the government's case that the co-conspirator's testimony had been independently corroborated; and erred in admitting as evidence against him the insurance policy applications submitted by the other participants.

Appellant's challenge to the sufficiency of the government's evidence to sustain a conviction and to the admissibility of the insurance policy applications share a common premise. The Mail Fraud Statute, 18 U.S.C.A. § 1341, makes it a crime for any person to mail or to knowingly cause to be delivered by mail any matter for the purpose of executing a scheme to defraud. Thus, to warrant a conviction two elements must be established: (1) a scheme to defraud, and (2) the mailing of some material for the purpose of executing the scheme. Pereira v. United States, 347 U.S. 1, 74 S.Ct. 358, 98 L.Ed. 435 (1954); United States v. Seasholtz, 435 F.2d 4 (10th Cir. 1970); Gusow v. United States, 347 F.2d 755 (10th Cir. 1965), cert. den. 382 U.S. 906, 86 S.Ct. 243, 15 L.Ed.2d 159 (1965). Appellant's stand throughout has been that in order to establish this

second element the government was required to demonstrate some direct link between the false information contained in the insurance applications and him, and since no substantial evidence was adduced linking him directly with the false statements contained in the applications the second element was not established. Similarly, he contends the admission into evidence of the insurance applications was erroneous because he was never directly connected with the fraudulent statements contained in them.

■■ The statutory requirement is not as stringent as the appellant would construe it. If the government is able to prove the defendant "caused" the fraudulent insurance applications to be mailed, then the second element of the offense is established. A defendant causes the mails to be used when he does an act with knowledge that the use of the mails will follow in the ordinary course of business, or where such use can be reasonably foreseen, even though not actually intended. Pereira v. United States, supra, 347 U.S. at 8–9, 74 S.Ct. 358.

■ In Marvin v. United States, 279 F.2d 451 (10th Cir. 1960), this Court held that use of the mail was established where it was shown the defendant set forces in motion which foreseeably would involve mail uses. Further, it was held that the alleged mail uses could be established circumstantially (at 454). In this case, therefore, the government did not have to link appellant directly with the fraudulent statements contained in the applications. Consequently, instead of proving the appellant directed the other participants to make false statements on their applications, the government need only establish that appellant did acts or set forces in motion which foreseeably would involve mail uses. On this point, viewing the evidence in the light most favorable to the government and giving them the benefit of all reasonable inferences, as we must, there was ample evidence to warrant denial of appellant's motion for acquittal. See, e. g., United States v. Ramsdell, 450 F.2d 130 (10th Cir. 1971); United States v. Ortiz, 445 F.2d 1100 (10th Cir. 1971). Moreover, since the insurance policy applications were relevant to show use of the mails in aid of a scheme to defraud their admission into evidence did not constitute a prejudicial abuse of discretion.

The evidence established that at some time prior to June 21, 1967, appellant had conceived the idea to defraud a number of insurance companies by having the other participants load up on insurance, become involved in a staged accident, and file claims under the various policies. One of the participants, Frank Cardinelli, following a nolo contendere plea, testified against appellant. In substance, he testified appellant contacted him following the death of his wife and offered him $500.00 to participate in a scheme. Subsequently, he met with appellant on several occasions, and during one of these meetings, appellant told him there would be a staged automobile accident. Later, appellant told him to purchase insurance coverage and furnished him with money to pay the premiums. Appellant also referred several insurance agents to him. There was additional testimony that appellant referred insurance agents to the other participants on several occasions. These referrals and subsequent sales were corroborated by the testimony of the insurance agents. The testimony of the agents also portrayed graphically the rapidity with which Cardinelli, Barbera, and Givigliano, the three participants, increased their insurance coverage shortly before the accident. Cardinelli further testified he did not fully disclose the extent of his additional insurance coverage on any of his applications. The applications received in evidence revealed that neither Cardinelli, Barbera or Givigliano fully disclosed the extent of their insurance coverage. The insurance agents testified that these applications were submitted to various state and regional offices.

On December 8, 1971, the participants met at appellant's house, where they inflicted wounds upon themselves and each other. Three of the participants, Cardinelli, Barbera and Givigliano left the house and drove towards the site where the accident was to occur. Barbera and Givigliano rode in one car; Cardinelli followed in a car which he had rented earlier that day. As prearranged, Cardinelli drove his car into the rear of the other vehicle while it was stopped at a red light, and all three received injuries and were taken to the hospital. Subsequently, all filed claims with the insurance companies and received benefits. The essential details of Cardinelli's testimony were corroborated by the manager of the car rental agency and by the police officers, physicians and insurance company personnel concerned. It is plain from the evidence that while appellant may not have participated directly in submission of the fraudulent applications, he nonetheless caused their mailing through his initiation and organization of the scheme. The evidence was likewise clearly sufficient to establish the conspiracy charged in Count VIII of the indictment.

Finally, appellant asserts the trial court erred in instructing the jury prior to the close of the Government's case that Cardinelli's testimony had been independently corroborated. Prefatory to Cardinelli's testimony, the trial court, at appellant's request, instructed the jury to the effect that they were not to consider Cardinelli's testimony as evidence against the appellant on the conspiracy count unless and until corroborated by independent, competent evidence. Later, but prior to the close of the Government's case, the trial court instructed the jury as follows:

"Now, Ladies and Gentlemen, I should caution you that by the rulings I have just made, that is the admission into evidence of certain exhibits, I don't want any of your (sic) to understand that I am suggesting what has or has not been proven as to ultimate facts. I am merely performing one of the functions that a judge has to perform when evidence is submitted, and that is to determine whether or not in the judge's opinion it is proper for the jury to consider, and that's all that my ruling should imply to you, that I find that in the state of the record this evidence as received is proper for you to consider. You will be the ones that will make the ultimate determination as to what value or weight you shall give to that testimony, and, also, ladies and gentlemen, you will recall that early in the trial I made or gave you an instruction relating to Count 8, that's the conspiracy count, and with particular reference to the testimony of the witness Frank Cardinelli. I stated in substance that that testimony could not or should not be considered by you until or unless it had been corroborated by independent evidence, and now I tell you that you can consider that evidence and give it such weight as you determine it is entitled to in the light of all the evidence that you have heard and will hear in the case."

Appellant considers the foregoing instruction to have prejudiced him in the presentation of his case because it, first, usurped the jury's function of judging the weight of the testimony and the credibility of the witnesses, and second, amounted to a directed verdict of guilty on the conspiracy count. Appellant would have left to the jury the question of whether the corroborative evidence was of sufficient quality and quantity to permit the jury to consider Cardinelli's testimony as evidence of a conspiracy. Also, he objects to the instruction as intimating to the jury that appellant would have to present evidence in his defense, thereby infringing upon his right to remain silent.

In making the determination that sufficient evidence of a conspiracy had been adduced, the trial judge, as he stated to the jury, was only deciding a question of fact upon which the competency of evidence depended. This is properly a function of the trial court.

Those courts which have been presented this question have uniformly held this to be the preferred practice. United States v. Bey, 437 F.2d 188 (3rd Cir. 1971); United States v. Eskow, 422 F.2d 1060 (2d Cir. 1970); United States v. Knight, 416 F.2d 1181 (9th Cir. 1969); United States v. Ragland, 375 F.2d 471 (2d Cir. 1967). To have the jury decide the question of whether the independent evidence was of sufficient quality and quantity as appellant would have them do, would render the testimony valueless, since it would serve only to confirm what the jury had already determined, i. e., the existence of the conspiracy charged. United States v. Dennis, 183 F.2d 201 (2d Cir. 1950), affirmed on other grounds, 341 U.S. 494, 71 S.Ct. 857, 95 L.Ed. 1137 (1951). We think the better practice is for the trial court to determine initially whether there is sufficient independent evidence to corroborate the co-conspirator's testimony, and to so instruct the jury. Nor did the trial court's instruction have the effect of directing a verdict of guilty on the conspiracy count. Considering the instruction in its entirety, it adequately states the scope of the court's determination and certainly does not usurp the jury's function. Rather, the court clearly informed the jury that it remained the sole judge as to the weight and credibility of Cardinelli's testimony, and that they should weigh his testimony along with all the evidence.

Finally, the trial court's instruction in no way compromised appellant's constitutional right to remain silent and rest upon the prosecution's lack of evidence. All the court told the jury was that they were to weigh Cardinelli's testimony "in the light of all the evidence that you have heard or will hear in the case." This phrase merely reiterated to the members of the jury their obligation as jurors. Taken in the context in which it was given, the instruction in no way intimates that the appellant would be required to, or even should, introduce evidence in his own behalf. This instruction was given for the purpose of clarifying the issues and assisting the jury, and as such was proper. Sagansky v. United States, 358 F.2d 195 (1st Cir. 1966); Semler v. United States, 322 F. 2d 6 (9th Cir. 1964).

The rulings, verdict and judgment of the trial court are affirmed.