393 A.2d 335

COMMONWEALTH of Pennsylvania

v.

Frank E. GRAZIER, Appellant.

COMMONWEALTH of Pennsylvania

v.

Eldon G. STUDEBAKER, Appellant.

Supreme Court of Pennsylvania.

Argued April 10, 1978.

Decided Oct. 5, 1978.

Samuel J. Reich, Mark L. Glosser, Pittsburgh, John B. Koontz, Bedford, for Frank A. Grazier.

Gordon E. Stroup, Dist. Atty., J. Andrew Smyser, Deputy Atty. Gen., Bedford, for the Com.

H. David Rothman, Pittsburgh, for Eldon G. Studebaker.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and LARSEN, JJ.

## OPINION

O'BRIEN, Justice.

This appeal is from an order of the Superior Court which reversed the Court of Common Pleas, Bedford County and held that a prior acquittal in Federal District Court of mail fraud in connection with an alleged arson scheme does not bar a state trial of appellants for the substantive crime of arson. We believe, however, that the acquittal in Federal Court does bar the state prosecution when both prosecutions are based on substantially the same evidence. We are thus compelled to reverse the Superior Court and reinstate the order of the Bedford County Court of Common Pleas. The facts are as follows.

On March 1, 1969, a fire destroyed the New Hoffman Hotel in Bedford, Pennsylvania. At the time of the fire, the hotel was owned by the wife of appellant Eldon G. Studebaker, the mayor of Bedford. Appellant was not a principal in the ownership of the New Hoffman Hotel Corporation; however, over the years, he had lent money to the corpora-

tion. At the time of the fire, Studebaker was personally obligated to pay $7,000 on an outstanding note in connection with the purchase of hotel equipment.

For some time prior to the fire, the corporation had been losing money. Studebaker agreed to aid the corporation in finding a buyer for the hotel. He talked to George Karsnack, who, along with appellant Frank E. Grazier, operated the Bedford Airport. In February, 1969, the principals of the corporation signed an agreement giving K & E Leasing (Karsnack and Grazier) an option to purchase the hotel. On March 5, 1969, four days after the fire, Karsnack agreed to exercise his option and purchase the hotel.

Karsnack then called Carl Luick, a public professional fire insurance adjuster to prepare his claims to various insurance companies. A settlement of $310,100 was reached between Karsnack and the insurance companies.

Following the fire, an investigation was commenced by the Pennsylvania State Police, but because of the lack of either evidence or investigative leads, the investigation was terminated.

In 1972, the Federal Strike Force of the United States Department of Justice began investigating suspected professional arsonists and their associates. With the urging of the federal authorities, state and local police reopened their investigation of the fire. The investigation led to federal indictments against the appellants, Luick and Merril Klein, the arsonist. The indictments charged twenty-two counts of mail fraud and one count of conspiracy to commit mail fraud. Subsequently, a grand jury in Bedford County returned Commonwealth indictments against appellants and Klein charging arson.

At the trial in Federal District Court, the principal witness against appellants and Klein was George Karsnack, an unindicted co-conspirator in the federal mail fraud indictments. Karsnack testified that he and the two appellants agreed to burn the hotel. Karsnack then contacted Klein, who set the fire. Luick, the fire adjuster, became part of

the scheme when his services were required to estimate damage and settle the claim.

Studebaker and Grazier denied any involvement in the arson. Grazier admitted using the mails to forward the insurance claims. Appellants introduced the testimony of Thomas Mitchell, a partner of Karsnack in Poughkeepsie Flight Service in New York. Mitchell testified that when Poughkeepsie Flight Service had financial problems, Karsnack suggested a fire. Mitchell then testified that Karsnack told him that he had done the same thing with a hotel in Bedford with two "partners" who knew nothing of the arson.

The Federal Court jury convicted Klein and Luick while acquitting Studebaker and Grazier. On appeal, Klein's conviction was affirmed without opinion. *United States v. Klein*, 3 Cir., 510 F.2d 971 (1975), while Luick's conviction was reversed and he was discharged. *United States v. Luick*, 3 Cir., 515 F.2d 751 (1975).

On March 12, 1974, appellants filed motions to quash their Commonwealth indictments charging arson. All parties entered into a stipulation that the evidence in the Commonwealth trial would be substantially the same as that presented at the federal trial. On May 1, 1975, the Court of Common Pleas of Bedford County dismissed the informations against both Studebaker and Grazier. Pursuant to appeal by the Commonwealth, the Superior Court reversed. *Commonwealth v. Studebaker*, 270 Pa.Super. 37, 362 A.2d 336 (1976). Appellants then filed a petition for allowance of appeal, which we granted.

In dismissing the informations against both appellants, the Court of Common Pleas in Bedford County held that a state prosecution for arson following an acquittal on federal mail fraud charges would be barred by § 111 of the Crimes Code.[1] The court further stated its belief that because of the cooperation between the state and federal authorities, it believed the federal prosecution was no more than a trial run and preview of the Commonwealth's arson prosecution.

1. 18 Pa.C.S.A. § 111.

■ Appellants first argue that § 111 requires reversal of the Superior Court. The Crimes Code provides:

§ 111. When prosecution barred by former prosecution in another jurisdiction.

"When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

"(1) The first prosecution resulted in an acquittal or in a conviction as defined in section 109 of this title (relating to when prosecution barred by former prosecution for same offense) and the subsequent prosecution is based on the same conduct unless:

"(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil; or

"(ii) the second offense was not consummated when the former trial began.

"(2) The former prosecution was terminated, after the indictment was found, by an acquittal or by a final order or judgment for the defendant which has not been set aside, reversed or vacated and which acquittal, final order or judgment necessarily required a determination inconsistent with a fact which must be established for conviction of the offense of which the defendant is subsequently prosecuted." Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 111.

We believe, however, that § 111 is not applicable in the instant case, because the legislature has provided:

"Title 18 of the Consolidated Pennsylvania Statutes (relating to crimes and offenses), as added by this act, does not apply to offenses committed prior to the effective date of this act and prosecutions for such offenses shall be governed by the prior law, which is continued in effect for

that purpose, as if this act were not in force. For the purposes of this section, an offense was committed prior to the effective date of this act if any of the elements of the offense occurred prior thereto." Act of November 25, 1970, P.L. 707, No. 230, as amended, Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S.A. § 2.

As the instant crime was committed in 1969 and predated the effective date of the Crimes Code by four years, § 111 is inapplicable to the instant controversy.

Appellants next argue that *Commonwealth v. Mills*, 447 Pa. 163, 286 A.2d 638 (1971) and *Ashe v. Swenson*, 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970) require a reversal of the Superior Court's order which reversed the trial court's order dismissing the information. We agree with appellants that the concepts embodied in these two cases bar a Commonwealth prosecution on arson charges.

The issue which this court considered in *Mills* was "whether or not a person may be convicted and punished in the courts of Pennsylvania if he has previously been convicted and punished in Federal Court for identical unlawful conduct." *Commonwealth v. Mills, supra*, 477 Pa. at 165, 286 A.2d 638. In *Mills*, the defendant had pled guilty in federal court to bank robbery. Mills then sought to have the state indictments for robbery dismissed, alleging that the pending state prosecution would violate his right against double jeopardy.

At the time this court considered *Mills*, the federal law was *Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959), wherein the Supreme Court dealt with a situation identical to *Mills* and held that *no* bar existed to a state prosecution following a conviction in federal court for two reasons. The court held that the federal Fifth Amendment provisions against double jeopardy was not applicable to the states through the Fourteenth Amendment. The court further held that the principle of "dual sovereignty" [2] also allowed the successive trials for the same robbery.

2. *United States v. Lanza*, 260 U.S. 377, 43 S.Ct. 141, 67 L.Ed. 314 (1922).

While *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969) subsequently held that the Fifth Amendment protection against double jeopardy was applicable to the states through the Fourteenth Amendment, no change has occurred concerning the "dual sovereignty" theory. Because of this, when this court decided *Commonwealth v. Mills, supra,* we held that *Bartkus* still permitted successive prosecutions. However, we stated:

"After giving careful consideration to all factors involved, we now rule, that henceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, *if it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed." Commonwealth v. Mills, supra,* 447 Pa. at 171–72, 286 A.2d at 642. (Emphasis added.) (Footnote omitted.)

The Commonwealth argues that *Mills* is inapplicable because the instant case involves a proposed prosecution for a *different* offense and because of the *acquittal* in Federal Court of the federal charges. We find neither distinction controlling.

As we stated in *Commonwealth v. Mills, supra,* 447 Pa. at 169, 286 A.2d at 641:

"The double jeopardy clause breaks down into three general rules which preclude a second trial or a second punishment for the same offense: (1) *retrial for the same offense after acquittal;* (2) retrial for the same offense after conviction; (3) multiple punishment for the same offense at one trial. The judiciary views these rules as expressions of self-evident moral precepts: *It is wrong to retry a man for a crime of which he previously has been found innocent,* wrong to harass him with vexatious prose-

cution, and wrong to punish him twice for the same offense." (Emphasis added.)

For purposes of double jeopardy analysis, the outcome of the first trial is generally irrelevant as long as the factfinder decides the merits of the question of the defendant's guilt or innocence. While *Mills* involved a conviction in Federal Court, its holding as to double jeopardy remains the same after an acquittal in Federal Court. We believe both the Commonwealth and the Superior Court read *Mills* too narrowly in this regard.

The Commonwealth next believes that *Mills* is inapplicable because the instant case involves successive trials for different offenses, i. e., mail fraud and arson. Again, we find the Commonwealth's attempted distinction to be one of form over substance.

In terms of the *Mills* analysis, a second trial will not be permitted if the interests of the Commonwealth are sufficiently protected at the federal trial. While the purpose of the federal mail fraud statute[3] may arguably be to protect the integrity of the mails, when viewed realistically it can be seen that the use of the mails gives jurisdiction to federal authorities over areas in which Congress has not specifically acted. As one commentator has stated, "If the difference between the statutes involved is primarily jurisdictional—for example—based on the presence or absence of the use of interstate commerce—it is likely that the Governmental interests involved are similar." Comment, 80 Harv. L.Rev. 1538, 1562. Instantly, both the federal government and the Commonwealth's principal interest is against the crime of arson. While federal mail fraud is a different crime from arson, both statutes as used in this case protect the same governmental interest. Under these facts, *Mills* will act as a bar to a state prosecution for arson following an acquittal in federal court for mail fraud in connection with a scheme to commit arson.

3. 18 U.S.C. § 1341.

■ Furthermore, we believe the doctrine of collateral estoppel prevents the Commonwealth from trying appellants. In *Ashe v. Swenson, supra,* the United States Supreme Court held that the doctrine of collateral estoppel was part of the Fifth Amendment protection against double jeopardy. As *Benton v. Maryland, supra,* made the Fifth Amendment's protection applicable to the states through the Fourteenth Amendment, collateral estoppel is a constitutional requirement applicable to the states.

■ As the Court stated in *Ashe v. Swenson, supra,* 397 U.S. at 443–44, 90 S.Ct. at 1194:

" 'Collateral estoppel' is an awkward phrase, but it stands for an extremely important principle in our adversary system of justice. It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

* * * * * *

"The federal decisions have made clear that the rule of collateral estoppel in criminal cases is not to be applied with the hypertechnical and archaic approach of a 19th century pleading book, but with realism and rationality. Where a previous judgment of acquittal was based upon a general verdict, as is usually the case, this approach requires a court to 'examine the record of a prior proceeding, taking into account the pleadings, evidence, charge, and other relevant matter, and conclude whether a rational jury could have grounded its verdict upon an issue other than that which the defendant seeks to foreclose from consideration.' The inquiry 'must be set in a practical frame and viewed with an eye to all the circumstances of the proceedings.' *Sealfon v. United States,* 332 U.S. 575, 579, 68 S.Ct. 237, 92 L.Ed. 180. Any test more technically restrictive would, of course, simply amount to a rejection of the rule of collateral estoppel in criminal proceedings, at least in every case where the first judgment was based upon a general verdict of acquittal." (Footnotes omitted.)

In *Ashe*, the court applied the doctrine to a situation where the defendant was accused of robbing six individuals at a poker game. The defendant was originally tried for the robbery of only one of the victims. Because of inadequate identification testimony, the defendant was acquitted. The court held that collateral estoppel barred the subsequent trials for the robbery of the five other victims.

 Federal mail fraud requires proof of a scheme to defraud and the use of the mails for the purpose of executing the scheme. *United States v. Pisciotta*, 469 F.2d 329 (10th Cir. 1972). A mailing by only one of the schemers in furtherance of the fraud binds all parties, regardless of their knowledge of the specific posting of the letter. *Pritchard v. United States*, 386 F.2d 760 (8th Cir. 1967), cert. denied sub nom. *Borchelt v. United States*, 390 U.S. 1004, 88 S.Ct. 1247, 20 L.Ed.2d 104 (1968). In the instant case, no dispute exists that appellant Grazier used the mails to process the insurance claims. The federal district court thus charged the jury:

> "The gist of Count 1 of the indictment, the conspiracy count, is a criminal agreement among the various defendants named and others not named as defendants to use the mails to carry out a scheme to defraud as charged. The success or failure of the scheme in whole or in part is not material.

> "Now, in reviewing the particular evidence applicable—and again when the Court makes a comment on the evidence, it is entirely a matter for the jury to consider, but I will illustrate the point here, the testimony which the government has produced and which, if believed by you to establish the conspiracy and the participants therein, was originally the testimony of George Karsnak, the unindicted coconspirator, and by that testimony, if believed by you, he establishes the participation of Klein and Studebaker and Grazier in a scheme." (Fed.Tr. 6120–6121)

Our review of the record convinces us that the only rational way of viewing the Federal jury's acquittal of appellants is that the jury did not believe either appellant

knew about the arson, and it is that fact which the state prosecutor wishes to attempt to prove to convict appellants on the state charge of arson.[4] See *People v. Borchers*, 67 Ill.2d 578, 10 Ill.Dec. 346, 367 N.E.2d 1955 (1977).

A fair reading of *Commonwealth v. Mills, supra,* and *Ashe v. Swenson, supra,* convinces us that the Superior Court erred in reversing the trial court and allowing the Commonwealth prosecution. While these types of cases cannot be decided by application of any *per se* rules, under the facts of this case, we believe the Commonwealth prosecution must be barred.

Order of Superior Court reversed and appellants are discharged.

MANDERINO, J., took no part in the consideration or decision of this case.

EAGEN, C. J., and POMEROY, J., concur in the result.

LARSEN, J., dissents.

4. The Commonwealth attempts to distinguish *Ashe v. Swenson, supra,* on the grounds that the parties in the two prosecutions are not the same. As the state trial court found, and we agree, the degree of federal-state cooperation in the instant investigation allows the doctrine of collateral estoppel to be applied to this case. Further, the Commonwealth admitted in an answer to a bill of particulars that the evidence it would present would be substantially the same as that presented in the federal prosecution.