546 A.2d 36

**COMMONWEALTH of Pennsylvania, Appellee,**

**v.**

**Kenneth A. STEIN, Appellant.**

Supreme Court of Pennsylvania.

Argued April 13, 1988.

Decided Aug. 10, 1988.

Reargument Denied Oct. 17, 1988.

2. *Id.*

3. 75 Pa.C.S. § 3731(a)(1). Act of December 15, 1982, P.L. 1268, No. 289, § 9.

138

Richard Max Bockol, for appellant.

Ronald T. Williamson, Deputy Atty. Gen., for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and STOUT, JJ.

## OPINION ANNOUNCING THE JUDGMENT OF THE COURT

PAPADAKOS, Justice.

This case concerns the question of whether the Court of Common Pleas of Philadelphia County (per Judge William Porter) was correct in quashing 27 counts of Medicaid fraud brought against Appellant. The Superior Court concluded that the pre-trial order quashing these counts was in error. For the reasons set forth below, we reverse and reinstate the order of the Court of Common Pleas.

The facts in this case are as follows. Appellant, Dr. Kenneth A. Stein, D.P.M., is a licensed podiatrist. At the time of his arrest in the instant case, on September 22, 1983, Appellant was a registered health care provider with the Commonwealth's Department of Public Welfare (DPW), which is the state agency that administers our Medical Assistance Program. Appellant was paid by the Commonwealth for podiatric services that he billed to the Medical

Assistance Program. Appellant was arrested and charged with 99 counts of Medicaid fraud as set forth in three separate bills of information. Informations were filed against Appellant charging him with 33 violations of each of three different sections of the Fraud and Abuse Control provisions of the Public Welfare Code, 62 P.S. §§ 1407(a)(1), (a)(4) and (a)(9).[1]

Essentially, Appellant was charged with billing DPW for services which, DPW charged, did not qualify for payments to Appellant as a medical provider. The disputed billings were for some 33 renewals of prescriptions for orthopaedic shoes for the children of three qualified medical assistance recipients. It is admitted that Appellant did not have face-to-face encounters with the minor children for whom he wrote the renewal prescriptions in this case. Rather, Appellant was contacted by the child's mother or elder sibling who indicated that there was a need for another prescription for orthopaedic shoes. Appellant claims that all of the children involved were from large families, that they were either at school or ill and so could not come to the doctor's office, and that no prescriptions were renewed until after Appellant had actually seen the child's mother or sibling at

---

1. 62 P.S. § 1407 provides, in pertinent part, as follows:

**§ 1407. Provider prohibited acts, criminal penalties and civil remedies**

(a) It shall be unlawful for any person to:

(1) Knowingly or intentionally present for allowance or payment any false or fraudulent claim or cost report for furnishing services or merchandise under medical assistance, or to knowingly present for allowance or payment any claim or cost report for medically unnecessary services or merchandise under medical assistance, or to knowingly submit false information, for the purpose of obtaining greater compensation than that to which he is legally entitled for furnishing services or merchandise under medical assistance, or to knowingly submit false information for the purposes of obtaining authorization or furnishing services or merchandise under medical assistance.

. . . . .

(4) Submit a claim for services, supplies or equipment which were not rendered to a recipient.

. . . . .

(9) Submit a claim for a service or item which was not rendered by the provider.

his office. In any event, it is conceded that Appellant consulted each child's office file and then wrote out the prescription requested. He subsequently billed DPW under Fee Schedule, Procedure Code # 90005.

The Commonwealth contends that the renewal of such prescriptions in this manner is not compensable because payments for such services are not authorized by DPW regulations. It further argues that by allegedly billing for "office visits," Appellant had not rendered the type of service which must be rendered in order for a service to qualify for payment as an "office visit" under those regulations.

The DPW manual sets forth a Fee Schedule (R., 7a). Immediately prior to setting forth the Fee Schedule, there is a paragraph included under "General Provisions" which provides as follows:

Providers shall include the appropriate procedure codes and terminology on all claims submitted for payment. The following fee schedules are all inclusive; therefore, only those services identified by a procedure code are covered by the Medical Assistance Program.

Immediately following is the Fee Schedule itself. "Procedure Code" # 90005 is the first code number listed. The "terminology" for which it is applicable is stated as follows:

Office visit, brief examination, evaluation and/or treatment.

Appellant argues that the real nature of the offenses for which he is being charged is that he improperly reported code number 90005 on his billing statement for the services rendered (as described above).

Effective January 1, 1983, the DPW manual was amended to include a "definitions" section. "Visit" is now defined as a "face-to-face encounter between a patient and a practitioner, except as otherwise stated in the specific Medical Assistance provider chapters, for the purpose of furnishing medically necessary medical services." (R., 8a).

Appellant filed a "Motion for Accelerated Rehabilitative Disposition and/or Motion to Strike the Information" with the Court of Common Pleas with respect to all 99 counts. Judge Porter treated this as a motion to quash (Trial court opinion, p. 1; R., 9a, n. 1) (see Pa.R.Crim.P. 306, and the comments thereto) and, as such, the motion was granted in part on November 6, 1985. Judge Porter quashed 9 counts on each of the three informations (27 counts in all). Each of the 27 counts which were quashed dealt with a billing for a prescription that had been written *prior* to January 1, 1983, the effective date of the amendments to the DPW manual defining a "visit" as a face-to-face encounter. Judge Porter concluded that the alleged offenses involved in the situations where the events occurred before the "face-to-face encounter" definition of January 1, 1983 became effective, were not offenses for which Appellant should be put on trial. The Court reasoned that the Fee Schedule—Procedure Code was subject to an ambiguous interpretation by a medical provider before the "face-to-face encounter" requirement was promulgated. The Court found that prior to January 1, 1983, Appellant did receive an office visit or office contact by members of the patients' families and that he did examine the patients' files or charts, and prescribed shoes for the patients' conditions. While conceding that it might be argued that the term "brief examination" might mean a brief examination of the patient (and not of the patient's file), and that the term "evaluation" might suggest an evaluation of the patient and not an evaluation of his or her file, the Court concluded that if only one interpretation could be gleaned from the pre–January 1, 1983 regulations, there would have been no need to add the "face-to-face encounter" definition of "visit" by the January 1, 1983 amendment. Therefore, the Court was satisfied that enough of an ambiguity existed in the definition of "office visit" before the January 1, 1983, revision so as to create a reasonable basis for misinterpretation of the term "office visit" prior to the issuance of the revised definition of the term "visit."

Immediately following Judge Porter's partial grant of the motion to quash, Appellant elected to waive his right to a jury trial and proceed to a non-jury trial before Judge Porter that same day on the remaining 72 counts, all of which related to prescriptions written after January 1, 1983. At the conclusion of the Commonwealth's case on November 7, 1985 (two days later), Judge Porter sustained Appellant's demurrer to 60 counts charged in the informations. Appellant was found not guilty on the remaining 12 counts. The Commonwealth promptly appealed both Judge Porter's order quashing 27 counts (relating to prescriptions written before January 1, 1983); and Judge Porter's order sustaining the demurrer to 60 counts. The two appeals were consolidated. The Commonwealth later discontinued its appeal with respect to the grant of the demurrer to the 60 counts on the basis of *Smalis v. Pennsylvania*, 476 U.S. 140, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986), which prohibits an appeal from the grant of a demurrer.

The Commonwealth's appeal to the Superior Court proceeded on the sole issue of the propriety of Judge Porter quashing the 27 counts relating to prescriptions written before January 1, 1983. The Superior Court reversed and remanded for re-trial, 363 Pa.Super 410, 526 A.2d 411 (1987). Judge Cavanaugh's opinion reasoned that any ambiguity or confusion as to Appellant's interpretation of the Fee Schedule was more properly a matter relevant to Appellant's defense and that the matter could be asserted at trial; but that the asserted ambiguity or confusion could not serve as a basis to quash facially valid informations. In other words, the Superior Court concluded that the informations established a minimum *prima facie* case such that Appellant was required to stand trial.

We granted Appellant's petition for allowance of appeal for two reasons. First, Appellant's argument concerning the language of the Fee Schedule, and its subsequent amendment, is patently troublesome and certainly suggests the existence of an ambiguity and a reasonable basis for misinterpretation. Second, Judge Porter's ruling on the

motion to quash was entered shortly before Appellant proceeded to trial before him on the other related charges. As Appellant persuasively argued, one might very reasonably conclude (especially in light of the subsequent grant of the demurrer) that Judge Porter's initial grant of the motion to quash was, in effect, a statement by him that, by reason of the language of the Fee Schedule, he could not find Appellant guilty. Therefore, allowing the Commonwealth to try Appellant on these charges might well violate his double jeopardy rights under these circumstances, particularly in light of *Smalis v. Pennsylvania, supra.* Appellant's double jeopardy argument is bolstered by the fact that proof of the charges which were quashed by Judge Porter might well include elements identical to those with respect to which Appellant has already been acquitted (or with respect to which demurrers have been sustained). Fairly difficult collateral estoppel issues are lurking, therefore, in Appellant's double jeopardy claims. See, *e.g., Commonwealth v. Grazier,* 481 Pa. 622, 393 A.2d 335 (1978). We do not reach Appellant's double jeopardy claims, however, because we have concluded that Judge Porter's decision to quash the 27 counts at issue was correct. Hence, the Superior Court's remand for a re-trial must be reversed. The decision to quash was correct because the DPW Fee Schedule and regulations as they existed prior to January 1, 1983, were vague and ambiguous as applied to the facts of this case.

 As a matter of due process, a criminal statute that fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute or that is so indefinite that it encourages arbitrary and erratic arrests and convictions is void for vagueness. *Colautti v. Franklin,* 439 U.S. 379, at 390, 99 S.Ct. 675, at 683, 58 L.Ed.2d 596 (1979). Whether a statute (or, as here, an administrative regulation) is vague or ambiguous is a matter of law to be determined from the face of the statute or regulation itself. It does not depend on a particular defendant's motive or intent, what a particular defendant thought the rule or statute meant, or whether or not the defendant

accurately guessed what the draftsman had actually intended. Special care must be taken by our courts when criminal penalties may be imposed, as here, for violations of an administrative rule or regulation. The administrative rules or regulations must be written so that they fill in the details of what is otherwise a broad statutory proscription against wrongdoing. They must describe with particularity what is permitted and what is forbidden. They must create standards that eliminate vagueness and uncertainty, not create it. See, K.C. Davis, Discretionary Justice 58 (1969); and see also, Schwartz, Administrative Law § 29 (1976).

■ Procedure Code # 90005 is to be used by a participating doctor to claim reimbursement for an "office visit, brief examination, evaluation and/or treatment." (R. 7a). The four terms are used disjunctively. Nothing about the terms "brief examination" or "evaluation" necessarily indicates that a face-to-face office visit is an essential pre-requisite to a charge for reimbursement under either of these categories. Indeed, it would be an unimaginative person who would contend that the English language is so dull and primative that either term is susceptible of but one rigid and narrow connotation. DPW conceded that even its use of the term "office visit" was vague and subject to misinterpretation when it amended its regulations effective January 1, 1983, to define "visit" as necessitating a face-to-face encounter. In short, we hold that these regulations, as they existed prior to January 1, 1983, were too vague and indefinite to indicate to Appellant, or to anyone else, that renewing a prescription without actually seeing the patient in a face-to-face encounter, but after having examined the patient's file, was not compensible; and that they were certainly too vague and indefinite to indicate that the use of Procedure Code # 90005 to make a claim for compensation for such services constituted the crime of fraud. Judge Porter correctly quashed the 27 counts at issue.

Reversed.

146

FLAHERTY, J., files a concurring opinion in which STOUT, J., joins.

NIX, C.J., and McDERMOTT, J., file a dissenting opinion.

FLAHERTY, Justice, concurring.

I cannot subscribe to the view that the term "office visit" is ambiguous or that it could mean anything other than a face-to-face encounter between a practitioner * and his patient in the practitioner's office. This is clear whether or not the term was defined in the DPW manual. The mere fact that a definitions section was introduced in the manual on January 1, 1983, does not mean that the term was ambiguous prior to that time.

I agree, however, that the procedure code, 90005, is too vague and ambiguous to form the basis of a criminal prosecution. Appellant billed for services performed under code 90005, believing that permissible services included "evaluations." The department's definition of code 90005 is "office visit, brief examination, evaluation and/or treatment." Reading the definition of code 90005 in comparison with other procedure codes and their definitions, it appears that code 90005 covers office visits incorporating a brief examination, evaluation or treatment. If the definition had been punctuated properly, it might have read "office visit: brief examination, evaluation or treatment." This is the meaning ascribed by the trial court and by Superior Court, and other codes indicate that this is what the DPW manual meant. Examples are: 90110, explained as "Home visit, brief examination evaluation and/or treatment"; 90300, defined as "Skilled nursing facility visit, brief examination"; and 90301, explained as "Intermediate care facility visit, brief examination." Thus, it appears that the manual intended to restrict the use of code 90005 to office visits during which the practitioner conducted a brief examination, evaluation or treatment of his patient.

* Appellant is not a medical doctor, but a podiatrist, a practitioner who treats the human foot.

It is nevertheless grammatically reasonable, albeit barely, to interpret procedure code 90005 as including any one of four different kinds of procedures: treatments, evaluations, brief examinations, or office visits. The behavior of Dr. Stein in this case might conceivably be viewed as some sort of evaluation, and under the wording of the definition for procedure code 90005, his claim for reimbursement cannot be viewed as criminally sanctionable.

In algebraic terms, one could understand code 90005 to require A, an office visit, combined with either B, a brief examination, C, an evaluation, or D, treatment. In other words, 90005 would require $A + B$, $A + C$, or $A + D$. The definition given in the manual, however, can be read to permit A or B or C or D, any one of which would satisfy the requirements of code 90005, without the need for an office visit.

Although I think the term "office visit" itself is quite clear, the definition of procedure code 90005 is sufficiently ambiguous that it cannot support the criminal charges brought against Dr. Stein. I therefore concur in the result reached by the majority.

STOUT, J., joins this concurring opinion.

NIX, Chief Justice, dissenting.

Socialized medical care is a concept that has been resisted in the United States for years. While I concede that there are legitimate concerns which would cause a prudent person to refrain from hastily pursuing this avenue of health care provision, I fear that the cost of medical care is rising at such a rate that some feasible alternative must be developed. At this stage of our civilization, where medical science has made significant advances in extending the length and improving the quality of human life, it should be our highest priority to assure that all people, regardless of their financial capabilities, have unfettered access to adequate medical care. Title XIX of the Social Security Act, 42 U.S.C. §§ 1396–1396s, which provides money to states to

fund medical assistance programs, is designed to assist in achieving this goal.

The majority today has engaged in sophistry in concluding that the regulations existing prior to January 1, 1983, were too vague to allow appellant to be held accountable for his impropriety. Section 1407 of the Public Welfare Code, 62 P.S. § 1407, prohibits providers such as appellant from presenting false or fraudulent claims to the Department of Public Welfare (D.P.W.) for payment. Clearly this statute is designed to preserve the integrity of programs such as the Medical Assistance Program so that the medically needy may avail themselves of necessary medical care.[1] Where the regulations are not without ambiguity, the provider should err on the side of declining payment so as not to deplete the limited resources allocated to the Medical Assistance Program. I would therefore encourage a strict construction of all D.P.W. regulations which permit providers to seek reimbursement for their services, so as to further the goal of adequate health care for all people.

I would hold that the informations filed against appellant, being valid on their face and proper under a strict construction of the relevant D.P.W. regulation, were erroneously quashed prior to trial by the court of common pleas. I would remand the case for trial.

McDERMOTT, Justice, dissenting.

The appellant, a podiatrist, would appear to have sufficient grammatical skills to know that one cannot evaluate a patient by talking to his mother or sister. The need for a colon to make clear what every one knows is the poorest of medical practice, evaluation without seeing a patient, is total nonsense.

1. In the introductory paragraph of Act of 1980, July 10, P.L. 493, No. 105, which preceded section 1407, the General Assembly declared that "[i]t is in the public interest that medical assistance services be administered and regulated in a way that will ensure that public funds will be properly expended for essential services to medically needy persons."

I agree with the Superior Court that there was a *prima facie* case, and the appellant should tell his story to a jury. Therefore, I would affirm the order of the Superior Court.