J-A27018-16

2017 PA Super 51

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| EMILY JOY GROSS | |
| Appellant | No. 375 EDA 2016 |

Appeal from the Order January 15, 2016
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000045-2010

BEFORE: PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

OPINION BY LAZARUS, J.: **FILED FEBRUARY 28, 2017**

Emily Joy Gross appeals from the order entered in the Court of Common Pleas of Monroe County, denying, *inter alia*, her motion to dismiss on double jeopardy grounds. Upon careful review, we reverse.

Our Supreme Court has previously set forth the facts of this matter as follows:

> Emily Gross and Daniel Autenrieth began a romantic relationship in early 2009. On May 4, 2009, Autenrieth's estranged wife filed a protection from abuse (PFA) petition against him in Northampton County where she lived. The court issued a temporary PFA order the same day prohibiting Autenrieth from having contact with his wife or children and evicting him from the marital residence. The same day, deputies from the Northampton [County] Sheriff's office went to Autenrieth's residence (also in Northampton County) to serve the temporary

---

[*] Former Justice specially assigned to the Superior Court.

PFA order and to transfer custody of the children to Autenrieth's wife. Gross was present, babysitting the children, and a deputy served the order on her as the adult in charge of the residence. The deputy incorrectly told Gross the temporary PFA order prohibited Autenrieth from possessing firearms. Another deputy explained the PFA order's terms to Autenrieth over the phone. On May 18, 2009, a final PFA order was issued, which prohibited Autenrieth from possessing firearms.

Gross routinely stayed overnight at Autenrieth's residence, but she lived and worked in New Jersey. On May 21, 2009, she attempted to acquire a New Jersey firearm permit but was informed the process would take several months. On May 29, 2009, Gross obtained a Pennsylvania driver's license using Autenrieth's address; within hours, Gross and Autenrieth went to a Berks County store, where Gross used her new license to buy a 9 millimeter handgun. Later, at his residence, Autenrieth showed Gross how to use the gun, offered to clean it for her, then put the gun in its box and stored it and its ammunition above his washer and dryer. This was the last time Gross saw the gun, though a few days later she learned Autenrieth had taken the gun, fired it with a friend, and replaced the ammunition used; Gross made no objection.

On June 7, 2009, Autenrieth took the gun, went to his estranged wife's house, and kidnapped his nine-year-old son at gunpoint. Police were called, Autenrieth fled, and the chase went on for 40 miles, ending with a shoot-out in Monroe County in which Autenrieth killed one Pennsylvania State Trooper and wounded another before being shot to death.

A criminal complaint was filed in Monroe County charging Gross with criminal conspiracy, 18 Pa.C.S. § 903(a); firearms not to be carried without a license, [18 Pa.C.S.] § 6106(a)(1) (co-conspirator); possession of firearm prohibited, [18 Pa.C.S.] § 6105(a)(1) (accomplice); and lending or giving of firearms prohibited, [18 Pa.C.S.] § 6115(a) (accomplice).

***Commonwealth v. Gross***, 101 A.3d 28, 31–32 (Pa. 2014).

Following proceedings which are not relevant to our disposition here, the matter was remanded by the Supreme Court to the Common Pleas Court of Monroe County for trial. Prior to the date of remand, the United States

Attorney filed an information in the U.S. District Court for the Eastern District of Pennsylvania, charging Gross with making false statements to a federal firearms licensee[1] and aiding and abetting a prohibited person to possess a firearm.[2] The federal government alleged that Gross lied in connection with her acquisition of the firearm and aided and abetted Audenrieth in possessing a firearm when she knew him to be prohibited from doing so. Gross ultimately pled guilty in federal court to making false statements to a federal firearms licensee.

Upon remand of the Commonwealth case to the common pleas court, Gross filed an omnibus pretrial motion, which she subsequently amended to include the instant motion to dismiss based upon double jeopardy. The trial court denied the motion and the instant appeal[3] follows, in which Gross raises the following question for our review:

_____

[1] 18 U.S.C. § 924(a)(1).

[2] 18 U.S.C. § 922(g)(8); 18 U.S.C. § 2.

[3] As a general rule of Pennsylvania law, a defendant can immediately appeal as of right an order that denies a non-frivolous motion to dismiss on state or federal double jeopardy grounds. **Commonwealth v. Orie**, 33 A.3d 17, 20–21 (Pa. Super. 2011). In this context, a frivolous double jeopardy claim is "a claim clearly and palpably without merit; it is a claim [that] presents no debatable question. Such futile claims, presumably interposed for purposes of delay or disruption, are to be expressly identified by the trial court through a written finding." **Id.**, quoting **Commonwealth v. Gains**, 556 A.2d 870, 874–75 (Pa. Super. 1989) (en banc). Pursuant to Pa.R.Crim.P. 587(B), in cases where the trial court denies a motion to dismiss on double jeopardy grounds, the court is required to make a specific finding as to
*(Footnote Continued Next Page)*

Did the trial court err in failing to dismiss the information against [Gross], where the information arises out of the same conduct for which [Gross] has already been prosecuted . . ., convicted . . . and sentenced . . . by the federal government, and the Commonwealth did not carry its burden of proving that the federal government's prior prosecution was intended to prevent a substantially different harm or evil than the Commonwealth's?

Brief of Appellant, at 3.

Our scope and standard of review is as follows: "An appeal grounded in double jeopardy raises a question of constitutional law. This [C]ourt's scope of review in making a determination on a question of law is, as always, plenary. As with all questions of law, the appellate standard of review is *de novo*." **Commonwealth v. Vargas**, 947 A.2d 777, 780 (Pa. Super. 2008) (citations and quotations marks omitted).

Where a defendant asserts that her state prosecution is barred by a prior federal action, our determination is governed by section 111 of the Crimes Code, which provides in pertinent part:

When conduct constitutes an offense within the concurrent jurisdiction of this Commonwealth and of the United States or another state, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this Commonwealth under the following circumstances:

(1) The first prosecution resulted in an acquittal or a conviction as defined in section 109 of this title (relating to when

(Footnote Continued) ────────────────

frivolousness. **See** Pa.R.Crim.P. 587(B)(4). Here, the trial court was silent as to whether it considered Gross' motion to be frivolous. However, in light of the fact that the court determined that the Commonwealth sought to prosecute Gross for the same conduct that led to her federal conviction, **see** 18 Pa.C.S.A. § 111, we conclude that the motion was not frivolous and, as such, Gross' interlocutory appeal is properly before this Court.

prosecution barred by former prosecution for the same offense) and the subsequent prosecution is based on the same conduct unless:

(i) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each requires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil[.]

18 Pa.C.S. § 111(1).

In applying section 111, the courts of this Commonwealth have consistently held that there are three relevant inquiries to be made. The first inquiry is whether or not the prosecution which the Commonwealth proposes to undertake involves the same conduct for which the individual was prosecuted by the other jurisdiction. *Commonwealth v. Traitz*, 597 A.2d 1129, 1132-33 (Pa. 1991); *Commonwealth v. Scarfo*, 611 A.2d 242, 256 (Pa. Super. 1992). If the answer to this question is yes, then we must determine whether each prosecution requires proof of a fact not required by the other, and whether the law defining the state offense is designed to prevent a substantially different harm or evil from the law defining the other jurisdiction's offense. *Scarfo*, 611 A.2d at 257. If the Commonwealth cannot satisfy both of these requisites, then the prosecution may not proceed. *Id.*

We begin with the first inquiry, i.e., whether the Commonwealth's prosecution of Gross involves the "same conduct" that formed the basis of her federal prosecution. In *Commonwealth v. Mascaro*, 394 A.2d 998 (Pa. Super. 1978), this Court defined "same conduct," as "encompass[ing]

all criminal behavior committed in support of a common and continuing scheme." *Id.* at 1001. Here, the trial court concluded – and the Commonwealth does not dispute – that the Commonwealth sought to prosecute Gross in state court for the same conduct that led to her federal conviction. Accordingly, the burden shifts to the Commonwealth to "lift[] the statutory bar against prosecution." *Commonwealth v. Calloway*, 675 A.2d 743, 748 (Pa. Super. 1996).

In order to satisfy its burden, the Commonwealth must first demonstrate that each prosecution requires proof of a fact not required by the other. Here, Gross pled guilty in federal court to making false statements to a federal firearms licensee in violation of 18 U.S.C. § 924(a)(1)(A).[4] Specifically, the federal government alleged that Gross knowingly lied to a licensed firearms dealer about her current residence when completing ATF Form 4473 in connection with the purchase of a firearm by stating that she resided at 24 Olde Penn Drive, Easton, Pennsylvania, when she actually resided in Westfield, New Jersey.

---

[4] A person commits an offense under section 924 when she "knowingly makes any false statement or representation with respect to the information required by this chapter to be kept in the records of a person licensed under this chapter [e.g., a person licensed to sell firearms] or in applying for any license or exemption or relief from disability under the provisions of this chapter[.]" 18 U.S.C. § 924(a)(1)(A).

In Pennsylvania state court, Gross is charged with conspiracy to commit unlawful possession of a firearm,[5] firearms not to be carried without a license,[6] possession of firearm prohibited,[7] and lending or giving of firearms prohibited.[8]   As the trial court correctly observes in its opinion,

_____

[5] 18 Pa.C.S.A. § 903(a).

[6] 18 Pa.C.S.A. § 6106(a)(1).  Gross was charged as a co-conspirator under this section, which provides as follows:

> (a) Offense defined.--
>
> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

*Id.*

[7] 18 Pa.C.S.A. § 6105(a)(1).  Gross was charged as an accomplice under this section, which provides as follows:

> (a) Offense defined.--
>
> (1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

*Id.*  At the time Gross purchased the firearm, Audenrieth was subject to a protection from abuse order which barred him from possessing firearms.

[8] 18 Pa.C.S.A. § 6115(a).  Section 6115(a) provides as follows:

*(Footnote Continued Next Page)*

unlike Gross' federal offense, none of these offenses requires proof that Gross made false statements or misrepresentations to a firearms dealer. Conversely, Gross' federal offense did not require proof that Autenrieth was not authorized or licensed to possess a firearm, or that Gross and Autenrieth had any type of agreement. Accordingly, the Commonwealth is able to satisfy the first of the two requirements for lifting the bar to prosecution under section 111.

In order to proceed with its prosecution of Gross, the Commonwealth must also demonstrate that the law defining the state offense is designed to prevent a substantially different harm or evil from the law defining the federal offense to which Gross pled guilty. After reviewing the statutes in question, the trial court concluded that:

> [t]he federal statute is aimed at preventing fraud in connection with the purchasing of firearms from licensed dealers. The statutes underlying the Commonwealth's proposed prosecution are aimed at entirely different evils: the agreement with others to provide a firearm, and knowingly providing a firearm to someone not legally able to possess it.

Trial Court Opinion, 1/15/16, at 16.

_(Footnote Continued)_ ——————————

> (a) Offense defined.--No person shall make any loan secured by mortgage, deposit or pledge of a firearm, nor, except as provided in subsection (b), shall any person lend or give a firearm to another or otherwise deliver a firearm contrary to the provisions of this subchapter.

_**Id.**_

Gross argues that, in concluding that the Commonwealth satisfied the "interest test" under section 111, the trial court's focus was "unacceptably narrow" in light of the applicable case law, and in light of the federal government's own description of the interests it sought to protect by prosecuting Gross. For the reasons that follow, we agree.

In **Commonwealth v. Mills**, 286 A.2d 638 (Pa. 1971), our Supreme Court announced the "interest test" that was subsequently codified in section 111, stating:

> we now rule, that henceforth in Pennsylvania, a second prosecution and imposition of punishment for the same offense will not be permitted unless it appears from the record that the interests of the Commonwealth of Pennsylvania and the jurisdiction which initially prosecuted and imposed punishment are substantially different. In other words, [i]f it appears that the interests of this Commonwealth were not sufficiently protected in the initial prosecution, then a second prosecution and imposition of additional punishment in Pennsylvania will be allowed.

*Id.* at 642.

The Court subsequently applied the **Mills** interest test in **Commonwealth v. Grazier**, 393 A.2d 335 (Pa. 1978). There, the defendants were accused of destroying a hotel by arson and using the U.S. mail to submit fraudulent insurance claims. They were charged, tried, and acquitted in federal court of mail fraud and conspiracy to commit mail fraud. The Commonwealth also charged them with arson. Following their acquittal in federal court, the defendants filed motions to quash their Commonwealth indictments on the basis of section 111 and the Supreme Court's holding in

*Mills*. The trial court dismissed the informations against both defendants. On appeal, this Court reversed and the Supreme Court subsequently granted allowance of appeal.

After concluding that section 111 was inapplicable because the crimes in question predated the effective date of the act, the Court proceeded to analyze the case under *Mills*. The Court rejected the Commonwealth's argument that *Mills* was inapplicable because the offenses charged in the two jurisdictions, i.e., mail fraud and arson, were different, finding this distinction "to be one of form over substance." *Grazier*, 393 A.2d at 339. The Court noted:

> While the purpose of the federal mail fraud statute may arguably be to protect the integrity of the mails, when viewed realistically it can be seen that the use of the mails gives jurisdiction to federal authorities over areas in which Congress has not specifically acted. As one commentator has stated, "If the difference between the statutes involved is primarily jurisdictional for example based on the presence or absence of the use of interstate commerce it is likely that the Governmental interests involved are similar." *Comment*, 80 Harv.L.Rev. 1538, 1562. Instantly, both the federal government and the Commonwealth's principal interest is against the crime of arson. While federal mail fraud is a different crime from arson, both statutes as used in this case protect the same governmental interest. Under these facts, *Mills* will act as a bar to a state prosecution for arson following an acquittal in federal court for mail fraud in connection with a scheme to commit arson.

*Id.* at 339-40.

Likewise, here, while the purpose of the federal statute prohibiting false statements in connection with the purchase of a firearm may arguably be, as the trial court found, to prevent fraud in connection with the

purchasing of firearms from licensed dealers, **Mills** requires that we take a broader view. The statute under which Gross was prosecuted was part of the Gun Control Act of 1968, "[t]he principal purpose of [which] was to curb crime by keeping 'firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency.'" **Huddleston v. United States**, 415 U.S. 814, 824 (1974). The legislation was "aimed at restricting public access to firearms" by requiring those seeking to purchase firearms to "provid[e] adequate and truthful information about firearms transactions." **Id.** Additionally, the U.S. attorney, in its sentencing memorandum, urged the court to look beyond the apparent non-violence of Gross' crime, arguing that "[i]t would be wrong to view this crime in a vacuum and claim that this is merely a fraud violation for lying on a required form." Government's Sentencing Memorandum, 4/19/11, at 7. The government went on to note that "[o]ne need only read the newspapers today to understand the devastating impact which gun crimes of this type can have upon society." **Id.** at 8. Accordingly, it is apparent that the federal government – both generally by enacting the Gun Control Act as well as specifically in its application of that law in this particular prosecution – sought to vindicate a greater interest, separate and apart from the mere prevention of fraud in the submission of federal paperwork.

The Pennsylvania statutes under which the Commonwealth seeks to prosecute Gross – provisions of the Uniform Firearms Act[9] – share that same purpose. As this Court has previously observed, "[t]he apparent purpose of the Act is to regulate the possession and distribution of firearms, which are highly dangerous and are frequently used in the commission of crimes." *Commonwealth v. Corradino*, 588 A.2d 936, 940 (Pa. Super. 1991). "[T]he mischief to be remedied was the unimpeded circulation of dangerous instruments and the object to be attained was the regulation and registration of transfers of same." *Id.* at 940. Accordingly, "as used in this case," *Grazier*, 393 A.2d at 339, both the federal and state statutes under which Gross was prosecuted are designed to vindicate substantially the same interests, i.e., the protection of the public by prohibiting the transfer of certain firearms to various categories of individuals.

Because the Commonwealth has not demonstrated that the law under which it seeks to prosecute Gross is designed to prevent a substantially different harm or evil from the law defining Gross' federal offense, *see* 18 Pa.C.S.A. § 111(1), the trial court erred in holding that the "interest test" under section 111 was satisfied. Having failed to satisfy both requisites to lifting the bar to prosecution under section 111, the Commonwealth is prohibited from proceeding with its prosecution of Gross.

_____

[9] Gross is also charged with one count of conspiracy to commit a violation of the Uniform Firearms Act.

Order reversed.  Case dismissed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/28/2017