630 A.2d 498

INFO CONNECTIONS, INC., Petitioner,

v.

The PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

The BELL TELEPHONE COMPANY
OF PENNSYLVANIA, Petitioner,

v.

The PENNSYLVANIA PUBLIC UTILITY
COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Feb. 1, 1993.

Decided Aug. 4, 1993.

464

Richard T. Mulcahey, Jr., for petitioner, Info Connections, Inc.

Julia A. Conover, for petitioner/intervenor, Bell Telephone Co. of Pennsylvania.

Donna Stanek Zehner, Asst. Counsel, for respondent.

Before PALLADINO and SMITH, JJ., and NARICK, Senior Judge.

SMITH, Judge.

Info Connections, Inc. and Bell Telephone Company of Pennsylvania appeal from an order of the Pennsylvania Public Utility Commission which dismissed Info Connections' complaint seeking funds Bell collected on its behalf, and assessed a penalty against Bell for continuing Info Connection's service when Bell knew it could not tender the collected funds to Info Connections.[1] The issues presented on appeal are whether the Commission erred by determining that Info Connections failed to meet its burden to prove that it was entitled to the funds; whether the Commission erred by accepting Bell's exceptions; and whether the Commission properly determined that Bell's actions constituted unreasonable service.

Info Connections is a California company involved in the business of providing telephone introduction services to individuals with common interests. On or about March 28, 1987,

1. By order of June 24, 1992, this Court consolidated the cross-appeals.

Info Connections and Bell entered into an agreement whereby Info Connections would use Bell's 976 audiotex network service and Bell would collect a sponsor-selected price for calls placed to Info Connections' service. Bell's audiotex service is a tariffed and regulated service in Pennsylvania which provides facilities for passive recorded announcements, interactive recorded announcements, and live programs within a service area. The two audiotex service areas in Pennsylvania are located in Philadelphia and Pittsburgh. Info Connections contracted with Bell to bill callers $2.12 per call which included Pennsylvania sales tax, an amount to be retained by Bell, and a remittance to be paid to Info Connections.[2]

In April, 1987, Info Connections began operating its chatline service marketed solely in New York by advertising in New York newspapers. Info Connections never disclosed its network configuration to Bell before commencing service. During the Spring of 1987, Info Connections realized that it was not receiving compensation from Bell for calls to its service. Info Connections' vice president communicated with Bell's product manager about this problem and after discussing how the service was configured, Bell informed Info Connections that calls to its audiotex number were not reimbursable under the terms of the tariff because the calls were not directly dialed within Pennsylvania.

On August 28, 1987, Info Connections filed a complaint against Bell seeking compensation for calls placed to its chatline. The parties stipulated that from March, 1987 until Info Connections terminated its service in February, 1988, 102,132 calls were completed to Info Connections' audiotex number for which Bell has not remitted compensation but has collected $138,269. The administrative law judge dismissed Info Connections' complaint because he found that the calls were not chargeable under the audiotex tariff as the calls originated outside Pennsylvania. The ALJ also noted that

2. Under the tariff in effect at the time Info Connections began using Bell's audiotex service, Info Connections was to receive $1.05 per call. Under the tariff filed after June 9, 1987, Info Connections was to receive $1.45 per call.

Bell should not "escape culpability" as it retained the entire fee when it knew or should have known that a questionable practice was continuing; and that by collecting fees that it could not tender to Info Connections, Bell violated its tariff. The ALJ imposed civil penalties against Bell in the amount of $100,000 for violating its tariff and $153,523.63 under a theory of unjust enrichment.

Both parties filed exceptions and Info Connections filed a motion to strike Bell's exceptions. The Commission upheld the dismissal of Info Connections' complaint and denied its exceptions and motion to strike Bell's exceptions, finding that Bell's exceptions were timely filed. With respect to Bell's exceptions, the Commission determined that while the fees collected and retained for transportation, billing, collection, taxes and surcharges are undeniably tariffed charges, the fees Bell collected for remittance to Info Connections are the value of a contract between the parties and therefore a matter which belonged before a trial court rather than the Commission. The Commission also determined that Bell's actions in continuing to permit service and collect fees and in failing to initiate suspension and/or termination after it knew or should have known that the calls were not reimbursable, constitute "unreasonable provisioning of service" in violation of Section 1501 of the Public Utility Code (Code), 66 Pa.C.S. § 1501. The Commission granted Bell's exceptions to the extent it determined that Bell did not overcharge Info Connections' customers and that the Commission had no authority to impose the civil penalty for unjust enrichment; however, the Commission did impose a $105,000 fine against Bell for violating Section 1501 representing $500 per day for the seven month period running from July, 1987 through February, 1988 when service was disconnected.

I.

On appeal to this Court, Info Connections argues that the Commission capriciously disregarded substantial evidence and erroneously concluded that it failed to sustain its burden to prove that the calls were placed within the audiotex service

area because the originating call to the audiotex number was from Info Connection's Philadelphia-based computer and the calls were subject to Pennsylvania sales tax. Info Connections also argues that the Commission erred when it failed to adopt the ALJ's determination that Bell should pay a civil penalty for violating Section 1303 of the Code, 66 Pa.C.S. § 1303. In addition, Info Connections maintains that Bell's exceptions were not timely filed with the Commission and did not adhere to proper form, and that the Commission's acceptance of the exceptions deprived Info Connections of procedural and substantive due process under the Pennsylvania and United States Constitutions.[3]

The audiotex tariff in effect when Info Connections started its service defined chargeable calls as: "directly dialed calls to 976 Audiotex Services by Telephone Company callers originating within the specific Serving Area to a 976 Audiotex Service also within the same specified Serving Area." Bell's audiotex tariff was amended in June, 1987 and provided that calls were "reimbursable" if they were "billed within the Commonwealth of Pennsylvania" and were "originated by ... callers within the specific 976 Audiotex Service Serving Area."

Info Connections argues that the calls from its Philadelphia-based computer were chargeable calls and therefore the calls originated within the audiotex service area. However, Info Connections does not dispute that the customer's calls were dialed from New York and that the calls were transferred into the audiotex service area. Clearly, it is the customer's call which initiates the transaction and culminates in the customer being billed for a call to the chat-line. Therefore, this Court cannot disturb the Commission's determination that the calls did not originate within the audiotex service area as that determination is based upon substantial evidence.

**3.** This Court's scope of review in Public Utility Commission cases is limited to a determination of whether constitutional rights have been violated, an error of law has been committed, or the Commission's findings and conclusions are not supported by substantial evidence. *West Penn Power Co. v. Pennsylvania Public Utility Commission*, 134 Pa.Commonwealth Ct. 53, 578 A.2d 75 (1990), *appeal denied*, 527 Pa. 660, 593 A.2d 429 (1991).

■  Section 1303 of the Code provides that a public utility shall not "receive from any person . . . a greater or less rate for any service rendered or to be rendered by such public utility than that specified in the tariffs of such public utility applicable thereto." Info Connections does not challenge the Commission's determination that the portion of the sponsor fee reimbursable to Info Connections is a charge for non-utility service outside the bounds of the tariffs and therefore a private contract matter. *See Elkin v. Bell Telephone Co. of Pennsylvania,* 491 Pa. 123, 420 A.2d 371 (1980); *Feingold v. Bell of Pennsylvania,* 477 Pa. 1, 383 A.2d 791 (1977) (the Commission does not have the power to award damages to a private litigant for breach of contract by a public utility). Therefore, the Commission correctly determined that Bell could not be assessed a fine for violating Section 1303 as that portion of the sponsor fees at issue was not subject to tariffs.[4]

Procedurally, Info Connections argues that Bell's exceptions were not timely filed and therefore were not properly accepted by the Commission. Exceptions to an initial decision of an ALJ may be filed within twenty days after the decision is issued. 52 Pa.Code § 5.533. Further, 52 Pa.Code § 1.12(a) provides that "[e]xcept as otherwise provided by statute, in computing a period of time prescribed or allowed by this title or by statute, the day of the act, event or default after which the designated period of time begins to run shall not be included." The ALJ's decision in this case was issued on March 16, 1990. Bell's exceptions filed on April 5, 1990 were timely as they were filed on the twentieth day after issuance of the ALJ's decision.

■  In addition, Info Connections argues that Bell's exceptions did not comply with 52 Pa.Code § 5.533(b) which re-

4.  The Commission also noted that a claim by Info Connections for those fees represents a contract matter and is best handled through the civil court system. In fact, Info Connections did file a breach of contract action in the United States District Court for the Eastern District of Pennsylvania and on September 10, 1992 the court entered an opinion and order concluding that there was no breach of contract but awarded $112,485.20 to Info Connections in sponsor fees on a theory of unjust enrichment.

quires: "[e]xceptions shall be stated in specific, numbered paragraphs, identifying the finding of fact or conclusion of law to which exception is taken and cite relevant pages of the decision. Supporting reasons for the exceptions shall follow each specific exception." However, the Commission waived this requirement and stated in its opinion that Bell "referenced pages of the [ALJ's] Decision which, by implication, address specific Findings of Fact and Conclusions of Law along with supporting rationale for said Exceptions." Clearly, the Commission has the authority to waive such procedural defects when they do not affect the substantive rights of the parties. *See* 52 Pa.Code § 1.2(a). Based on the foregoing discussion, this Court concludes that the Commission properly dismissed Info Connections' complaint and exceptions and denied its motion to strike Bell's exceptions.

## II.

■ Bell argues that the Commission had no grounds to conclude that its failure to terminate Info Connections' service constituted "unreasonable service" because Bell had a statutory duty to provide service to Info Connections under the tariff. Bell further argues that because its actions were completely consistent with the terms of its tariff, it is shielded from any penalty or forfeiture pursuant to Section 3303(a) of the Code, 66 Pa.C.S. § 3303(a). Finally, Bell argues that even if it did violate a statutory duty, the penalty the Commission imposed is unlawful because it was imposed for violating a duty that was not clearly and unambiguously defined.

By law every public utility shall furnish and maintain adequate, efficient, safe and reasonable services and facilities and shall make repairs, changes, alterations, substitutions, extensions and improvements in its services and facilities as necessary or proper for the accommodation, convenience, and safety of its patrons, employees, and the public. Section 1501 of the Code, 66 Pa.C.S. § 1501. Further, Section 501(a), 66 Pa.C.S. § 501(a), gives the Commission the authority to execute and carry out the provisions of the Code, including those of Section 1501. *AT & T Communications of Pennsylvania v. Pennsyl-*

*vania Public Utility Commission,* 130 Pa.Commonwealth Ct. 595, 568 A.2d 1362 (1990) (misquoting telephone rates is an unreasonable service and a violation of Section 1501).

Bell's tariff indicates that if a customer fails to comply with tariff regulations, Bell may suspend or terminate the audiotex service. This provision is permissive and not mandatory and failure to suspend or terminate does not constitute a tariff violation. Although this Court has recognized that the word "may" can have a mandatory import where the logical context of a provision requires it, *Carroll Township v. Jones,* 85 Pa.Commonwealth Ct. 400, 481 A.2d 1260 (1984), the Commission specifically determined that Bell's tariff regarding suspension or termination is permissive. Thus, Bell did not violate its tariff by not suspending or terminating the audiotex service as the Commission has unequivocally determined.

■ Although Bell did not provide written notice to Info Connections of its position regarding the New York calls and Info Connections' configuration, the Commission nonetheless found that Bell advised Info Connections that it would not be compensated for the calls under the terms of the tariff. The Commission has provided no authority for its position that Bell's notice was required to be in writing and that this omission, among others, supports a Section 1501 violation of providing unreasonable service. The record clearly demonstrates that it was Info Connections who failed to heed Bell's warning and instead continued the service until February, 1988 when it decided to terminate the service. Under the facts established, the Commission may not conclude that this was a case wherein Bell was misleading a customer by supplying inaccurate information. *Compare AT & T Communications of Pennsylvania.*

In addition, while the filing of a petition for a declaratory order with the Commission may have been a prudent course of action, Bell had no duty to file such a petition and cannot be penalized for this omission when it was under no duty to take action. *See Commonwealth v. Stein,* 519 Pa. 137, 546 A.2d 36 (1988), *cert. denied,* 490 U.S. 1046, 109 S.Ct. 1953, 104 L.Ed.2d 422 (1989) (administrative rules and regulations must be writ-

ten, must describe with particularity what is forbidden, and must create standards that eliminate vagueness and uncertainty). Logic therefore dictates that where one has no legal duty to take a particular action under a given set of circumstances not specifically forbidden, that person may not be penalized for such inaction because, as here, it causes "concern" to the administrative agency.

Section 3303(a) provides that public utilities:

shall [not] be liable for any penalty or forfeiture, or be subject to any prosecution, on account of demanding, collecting, or receiving any rate for any service, or for enforcing any regulation, or practice when such rate, regulation, or practice is contained in a tariff properly filed with the commission and posted or published as herein provided, and is applicable by the terms thereof at the time to such service although such rate, regulation, method or practice may be found by the commission to be unjust or unreasonable.

Consequently, Bell cannot be penalized for collecting its rate in accordance with the tariff, and, as the Commission found, Bell did not collect excessive rates. Furthermore, the Commission had no authority to penalize Bell for its inaction regarding a private contract matter which the Commission has determined was not properly before it. *See Elkin; Feingold.* Since Bell did not violate its tariff and since the private contract matter was not properly before the Commission, it erred by imposing the $105,000 penalty.[5] Hence, the order of the Commission is reversed as to imposition of the fine against Bell and affirmed in all other respects.

## ORDER

AND NOW, this 4th day of August, 1993, the order of the Public Utility Commission entered May 8, 1992 is reversed to

---

**5.** This Court has repeatedly observed the well-established rule that "the construction given a statute by those charged with its execution is entitled to great weight and should be disregarded or overturned only for cogent reasons and if clearly erroneous." *Pennsylvania Liquor Control Board v. Burrell Food Systems, Inc.,* 97 Pa.Commonwealth Ct. 101, 104, 508 A.2d 1308, 1309 (1986), *appeal denied,* 513 Pa. 636, 520 A.2d 1386 (1987). Here, the Commission's interpretation finds no basis in law.

the extent that it imposed a $105,000 fine against Bell Telephone Company of Pennsylvania and affirmed in all other respects.